**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| BARRIO BROS., LLC | ) | JUDGE: |
| 3190 West 63rd Street | ) | |
| Cleveland, Ohio 44102 | ) | CASE NO.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| JUSTIN HUGHES, LLC | ) | **COMPLAINT FOR INJUNCTIVE** |
| 806 Literary Road | ) | **RELIEF AND MONEY DAMAGES** |
| Cleveland, Ohio 44113 | ) | |
| | ) | |
| Plaintiff, | ) | **(Jury Demand Endorsed Herein)** |
| | ) | |
| -and- | ) | |
| | ) | |
| TRES AMIGOS LAKEWOOD, LLC | ) | |
| 15527 Madison Ave., | ) | |
| Lakewood, Ohio 44107 | ) | |
| | ) | |
| Plaintiff, | ) | |
| -and- | ) | |
| | ) | |
| MR. THOMAS LENEGHAN | ) | |
| 1585 Greenleaf Circle | ) | |
| Westlake, Ohio 44145 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| MR. SEAN FAIRBAIRN | ) | |
| 26585 Sudbury | ) | |
| North Olmsted, Ohio 44070 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

1

REVOLUCION, LLC )
A Delaware limited liability company )
D/B/A Condado Tacos )
1227 North High Street )
Columbus, Ohio 43201 )
)
        Defendant, )
)
-and- )
)
REVOLUCION HOLDING, INC. )
c/o The Corporation Trust Company )
Corporation Trust Center )
1209 Orange St )
Wilmington, Delaware 19801 )
)
        Defendant, )
)
-and- )
)
CASSYCK, LLC )
United States Corporation Agents, Inc. )
3250 West Market Street, Suite 205 )
Fairlawn, Ohio 44333 )
)
        Defendant, )
)
*-and-* )
)
MR. JOSEPH KAHN )
110 Liberty Street, Apt. 11201 )
Columbus, Ohio 43215 )
)
        Defendant, )
)
*-and-* )
)
CONDADO TACOS 1, LLC )
A Delaware limited liability company )
D/B/A Condado Tacos )
1932 Service Corp. )
1301 East Ninth Street, Suite 3500 )
Cleveland, Ohio 44114 )
)
        Defendant, )
)

2

*-and-*                                              )
                                                     )
CONDADO TACOS 2, LLC                                 )
A Delaware limited liability company                 )
D/B/A Condado Tacos                                  )
1932 Service Corp.                                   )
1301 East Ninth Street, Suite 3500                   )
Cleveland, Ohio 44114                                )
                                                     )
            Defendant,   )
                                                     )
*-and-*                                              )
                                                     )
CONDADO TACOS 4, LLC                                 )
A Delaware limited liability company                 )
D/B/A Condado Tacos                                  )
1932 Service Corp.                                   )
1301 East Ninth Street, Suite 3500                   )
Cleveland, Ohio 44114                                )
                                                     )
            Defendant,   )
                                                     )
*-and-*                                              )
                                                     )
CONDADO TACOS 5, LLC                                 )
A Delaware limited liability company                 )
D/B/A Condado Tacos                                  )
1932 Service Corp.                                   )
1301 East Ninth Street, Suite 3500                   )
Cleveland, Ohio 44114                                )
                                                     )
            Defendant,   )
                                                     )
*-and-*                                              )
                                                     )
CONDADO TACOS 6, LLC                                 )
A Delaware limited liability company                 )
D/B/A Condado Tacos                                  )
1932 Service Corp.                                   )
1301 East Ninth Street, Suite 3500                   )
Cleveland, Ohio 44114                                )
                                                     )
            Defendant,   )
                                                     )
*-and-*                                              )
                                                     )

CONDADO TACOS 7, LLC                          )
A Delaware limited liability company          )
D/B/A Condado Tacos                           )
1932 Service Corp.                            )
1301 East Ninth Street, Suite 3500           )
Cleveland, Ohio 44114                         )
                                              )
       Defendant,                    )
                                              )
*-and-*                                       )
                                              )
CONDADO TACOS 8, LLC                          )
A Delaware limited liability company          )
D/B/A Condado Tacos                           )
1932 Service Corp.                            )
1301 East Ninth Street, Suite 3500           )
Cleveland, Ohio 44114                         )
                                              )
       Defendant,                    )
                                              )
*-and-*                                       )
                                              )
JONATHAN D. ADAMS                             )
342 Pinehurst Road                            )
Sandwich, New Hampshire 03227                 )
                                              )
       Defendant,                    )
                                              )
*-and-*                                       )
                                              )
THOMAS J. DeSANTIS                            )
100 S. Pointe Drive, Apt. 1408               )
Miami Beach, Florida 33139-7368              )
                                              )
       Defendant                     )

## THE PARTIES

1.     Mr. Thomas Leneghan ("Leneghan") is an individual residing in Cuyahoga County, Ohio, who at all relevant times conducted business in Cuyahoga County, Ohio.

2.     Mr. Sean Fairbairn ("Fairbairn") is an individual residing in Cuyahoga County, Ohio, who at all relevant times conducted business in Cuyahoga County, Ohio.

4

3.      Co-Plaintiff, Barrio Bros., LLC, is an Ohio limited liability company, having its principal offices in Cuyahoga County and is the sole member of each Tres Amigos, LLC, and Justin Hughes.

4.      Co-Plaintiff Tres Amigos, LLC, is an Ohio limited liability company that owns and operates the Barrio location in Lakewood, Ohio, ("Barrio Lakewood").

5.      Co-Plaintiff Justin Hughes is an Ohio limited liability company that owns and operates the Barrio location in the Tremont neighborhood of Cleveland, Ohio.

6.      Defendant Cassyck, LLC ("Cassyck"), is an Ohio limited liability company owned by Mr. Joseph Kahn ("Kahn") and Mrs. Julie Kahn (husband and wife).  Cassyck, LLC, was formerly a minority member of Justin Hughes, owning 6% thereof.

7.      Defendant Kahn, who was a member of Cassyck, was employed by Justin Hughes to manage the day-to-day operations of the Tremont Barrio location.  Defendant Kahn was terminated from his employment with Justin Hughes in or about 2013.

8.      Defendant Revolucion, LLC, ("Revolucion") is a Delaware limited liability company, registered to do business in the State of Ohio as a foreign corporation.

9.      Defendant Revolucion Holding, Inc., is a Delaware corporation, registered to do business in the State of Ohio as a foreign corporation.

10.     Upon information and belief, Defendant Kahn and/or Cassyck is a member and manager of Revolution.[1]

11.     Upon information and belief, Defendant Jonathan Adams is an investor, shareholder, officer, and director involved in the control, direction and operation of Revolucion and Condado's.

---

[1] "Defendants" will be used to collectively refer to: Revolucion; Kahn; Cassyck; and Condado's 1-8.

12.     Upon information and belief, Defendant Thomas DeSantis is an investor, shareholder, officer, and director involved in the control, direction and operation of Revolucion and Condado's.

## JURISDICTION AND FACTS

13.     This Court possesses subject matter jurisdiction over the claims asserted herein as they arise under the laws of the United States within the meaning of 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. §1121.

14.     This Court possesses supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

15.     This Court possesses personal jurisdiction as to each Defendant as they are either located in Ohio or each regularly conducts and transacts business within the geographic boundaries of this Court.  Further, Plaintiffs' causes of action arise from Defendants' transaction of business, which are causing injury to Plaintiff within the geographic boundaries of this Court.

16.     Venue is proper in this Court, as one or more of the Defendants resides in this District. 28 U.S. Code § 1391(b)(1).

17.     Further, all or part of the claims for relief arose in this District. 28 U.S. Code § 1391(b)(2).

## BACKGROUND FACTS
### Formation of Barrio

18.     In or about 2012, Leneghan developed the concept of a unique build-your-own taco restaurant named Barrio.  The word barrio is Spanish meaning "neighborhood".  Thus, Leneghan believed that the Tremont, Ohio, neighborhood was the perfect place for his idea of a trendy "hipster" Mexican styled restaurant.

19. Leneghan owns an Ohio limited liability company known as Sandy Banks, LLC, (a non-party to this action). At all times relevant Sandy Banks owned the real property at 806 Literary Road in the Tremont neighborhood of Cleveland, Ohio (the "Literary Road Property").

20. Leneghan sought to locate his Mexican restaurant at the Literary Road Property.

21. Defendant Kahn approached Leneghan about renting the Literary Road Property for a market style restaurant.

22. Defendant Kahn represented to Leneghan that the former had particular expertise, knowledge and skills as a restauranteur and that he wanted to copy a restaurant located in Indianapolis, Indiana, called "Goose the Market" and situate it within the Literary Road Property.

23. Mr. Leneghan rejected Mr. Kahn's solicitation to rent the Literary Road Property for the proposed market/styled restaurant and informed Mr. Kahn of his own plans to utilize the Literary Road Property for the establishment of a build-your-own taco restaurant, i.e. Barrio.

24. Thereafter, based on Defendant Kahn's represented expertise in the restaurant industry, Leneghan offered Defendant Kahn the opportunity to buy-into Justin Hughes and participate in the management of Barrio. Defendant Kahn accepted.

25. Thus, the first and original Barrio was opened at the Literary Road Property in the Tremont (hereinafter referred to as "Tremont Barrio"). The Tremont Barrio was/is owned by Co-Plaintiff, Justin Hughes, LLC ("Justin Hughes").

## Barrio Trade Dress

26. Leneghan created the look and feel of Barrio, which is unique and clearly identifiable to any customer walking in the door.

27. Barrio features a Mexican "Day of the Dead" theme in which the interior walls of the restaurant are covered in a street artist styled décor. Skull designs are found painted on the

walls throughout the restaurant. Servers are dressed in street clothes and the furnishings are simple: unclothed tables and chairs.

28.     On each dining table, customers will find a table caddy that holds a roll of paper towels in lieu of napkins, a long, thin pad of paper displaying a scantron-style menu, and several pre-sharpened pencils.

29.     The menu at Barrio allows customers to build their own tacos. The menu is divided into seven (7) sections: Tortillas; Protein; Cheese; Toppings; Salsa; Sauces; and Sides. In each section are relevant fresh taco ingredients for the customer to select. To the right of each ingredient choice are circles that the customer can use the provided pencil to fill in if he/she wants that ingredient on a taco. A customer can create up to two custom tacos on each menu form.

30.     The custom tacos are then served wrapped in foil and are served with tortilla chips in rectangular paper food trays and plastic baskets accompanied with a spork. Guacamole, salsa, and queso, if ordered, are served in black, caldron-style, bowls with a basket of tortilla chips. And alcoholic beverages, such as craft brews and specialty margaritas, are served in mason jars.

### Popularity of Barrio

31.     Barrio quickly became popular in the Cleveland market. In or about 2013, Mr. Leneghan established a second Barrio location in Lakewood, Ohio, ("Barrio Lakewood") which was/is owned and operated by Co-Plaintiff Tres Amigos, LLC.

32.     In addition to Barrio Tremont and Barrio Lakewood, Barrio Bros. owns, through separate operating limited liability companies four additional Barrio restaurants in: Cleveland Heights, Ohio; Willoughby, Ohio; and the Gateway District of Cleveland, Ohio. In addition, Barrio Bros. has an ownership interest in a Barrio located in Portsmouth, New Hampshire. All Barrios, including Barrio Tremont and Barrio Lakewood, are referred to collectively as "Barrios".

33.     Fairbairn and Leneghan are the sole members of Barrio Bros. and Fairbairn is the operator in charge of each Ohio Barrios location.

34.     Barrio has received many accolades including one of the "25 Best Things to do in Cleveland, Ohio"; one of the "Top 10 Taco Stands in America"; the "Best Mexican Restaurant" in Ohio; and "Best Restaurant in Downtown Cleveland," among others.

### Agreement with Kahn

35.     Defendant Kahn only had interest in Tremont Barrio and Lakewood Barrio.

36.     A dispute arose between Leneghan and Kahn in or about 2013, after the Tremont Barrio location opened and began doing business.

37.     The dispute resolved via a Mutual Release & Settlement Agreement ("RSA") which divested Kahn and Cassyck of any ownership in all Barrio; prohibited the use and dissemination of Barrio's trade secrets; and prevented Kahn from operating a Mexican themed restaurant for a period of time in the Cleveland market.

38.     Unbeknownst to Plaintiffs and contrary to the representations in the later executed RSA, Kahn had secretly began discussions with potential business partners, i.e.  Defendants Jon Adams and Tom DeSantis, to copy Barrio's trade dress in the development of a competing restaurant, to wit, Condado Tacos.

39.     In spite of their actions, pursuant to the terms of the RSA, Defendant Kahn, Cassyck and Mrs. Julie Kahn (a non-party) (collectively referenced in the RSA as the "Kahn Parties") relinquished all rights in and to Justin Hughes, Tres Amigos and Barrio. *Id*. at ¶2.

40.     The RSA further specifies that the "Kahn Parties" "shall be forever prohibited from owning, conducting or engaging in business activities under the trade-name of 'Barrio' and shall

be prohibited from utilizing any logo, trade mark or service mark associated with 'Barrio' including the phrase 'in the heart of . . .'" *Id*. at ¶8.

41.     The Kahn Parties further agreed that they would not disclose or disseminate any trade secrets of the "Leneghan Parties," which is a defined term including Leneghan, Justin Hughes and Tres Amigos. *Id*. at ¶10.

### Defendants' Wrongful Acts

42.     Notwithstanding the RSA's express prohibitions against Kahn and Cassyck utilizing, disclosing, or disseminating Barrio's trade secrets, trademarks, service marks, and its "in the heart of" phrase, Kahn has in fact stolen, disseminated, used and is using such intellectual property in conducting the business operations of Condado Tacos.

43.     Moreover, Condado Tacos improperly misappropriated the Barrio's trade dress and trade secrets such that patrons walking in the door are likely to be confused and have been confused as to the connection, association, sponsorship and/or affiliation between Condado Tacos and Barrio's. **Exhibit A**.

44.     Even the name Condado creates confusion to those aware that Condado roughly translates to "county." Thus, instead of being located "in the heart of" the neighborhood (Barrio's), Condado is "in the heart of" the county.

45.     Further, despite Kahn's agreement to not use the phrase "in the heart of…," several press releases issued about Condado Tacos have used this phrase to describe the locations of Condado Tacos. See **Exhibit B**, which states that Condado is "[l]ocated right in the heart of the Short North…" with respect to its Columbus, Ohio location; and **Exhibit C,** which states that Condado Tacos is "right in the heart of downtown" Pittsburgh.

46.     Kahn exacerbates customers' confusion with Barrio by his authorized statements that he was an original founder of Barrio.

47.     Defendants have thereby infringed on Barrio's trade dress and trade secrets and they continue to do so.

48.     In or about August or September, 2014, immediately after entering into the RSA, Defendant Kahn formed Revolucion, LLC, then registered same as a foreign corporation and registered "Condado Tacos" ("Condado's") as a registered trade name.

49.     Revolucion owns and operates each Condado's location.

50.     Condado's is a Mexican restaurant utilizing Barrio's trade secrets and trade dress, *to wit,* each Condado's location is designed around the same "Day of the Dead" theme utilized by Barrio, uses the same street art restaurant décor utilized by Barrio, and is made to mimic Barrio's in nearly every respect.

51.     The minute a patron walks into a Condado, the patron is immersed in an atmosphere and embarking on a dining experience that has the look and feel of Barrio. Not only are the ingredients all fresh and the overall theme being "Day of the Dead" but patrons order from preprinted checklists, placed at every table together with pre-sharpened pencils. **Exhibit D**. Many of the ingredients are identical to Barrio's, the custom created tacos are served in a similar manner right down to the plastic spork placed in every plastic basket serving foil wrapped tacos. *Id*. Prior to receiving their custom designed taco, patrons are provided fresh chips and salsa and libations each served in a confusingly similar fashion as though the patron was at Barrio.  Further, in lieu of a napkin the patron has an available roll of brown paper towels at strategic locations, just like Barrio.  And all staff are in street clothes to maintain the same trendy atmosphere owned and established by Barrio. Side by side photographs of Barrio and Condado Tacos are shown below.







52.     Simply put, when a patron walks into Condado's, they are immediately confused as to whether it is actually a Barrio or there is some affiliation between the two.  See **Exhibit A**, which are numerous customer accounts regarding their confusion and similarities between the competing restaurants.

53.     On pre-printed checklists at every table, a patron is able to select taco creations suggested by Condado, select a taco of the month, or create a taco for which there are over 1000 possible combinations.  The only limits, as at Barrio, are certain additional charges for extra meats, or if certain sides such as rice, beans, or jalapenos are ordered.

54.    The trade secrets Defendants misappropriated from Barrio, including the Point of Sales system set up, enabled Defendants to gain the untoward advantage of Barrio's proven methods to ensure immediate success.  Defendants misappropriation allowed them the ability to affordably price tacos and stock ingredients without any concern of having to blindly anticipate what items would be ordered or how many of the possible selections would be added to customers tacos, or even how much of each ingredient to put on tacos when few or many items are selected by a particular patron.  Defendants capitalized on the hard work of Barrio's established methods to quickly flood the market and seize control.

55.    Kahn had no intention of complying with the RSA. It was simply a tool to trick Plaintiffs and buy time in order to compete with Barrio by improperly using the latter's trade secrets and trade dress.  By doing so, Condado's has stolen market share, limited Barrio's expansion into certain markets of its original trade dress and trade secrets, has confused patrons and has diminished Barrio's good will by serving a lower standard foods, likely a result of tweaks made to recipes that but for the name placed on identical menus are largely identical.

56.    By opening the first Condado's in Columbus, a city inhabited by a large population of people from the Cleveland area, especially students attending Ohio State University, Condado's capitalized on Barrio's established brand through misappropriation of the latter's trade secrets and trade dress. Condado's inappropriately mimicked Barrio's dining and entertainment experience to all Cleveland transplants that have come to enjoy the Barrio brand while expanding Barrio's unique and protected brand to a whole new market.  The first Condado's opened within a couple short months following the execution of the RSA.

57.    Currently, through separate, wholly owned Delaware limited liability companies, Revolution operates seven Condado Tacos locations in the States of Ohio, Pennsylvania and

Indiana, *to wit,* the following Co-Defendant entities are believed to be wholly owned by Revolution, each operating a separate Condado's locations: Condado Tacos 1, LLC; Condado Tacos 2, LLC; Condado Tacos 4, LLC; Condado Tacos 5, LLC; Condado Tacos 6, LLC; Condado Tacos 7, LLC; and Condado Tacos 8, LLC (collectively "Condado's").

## COUNT ONE
### (Misappropriation of Trade Secrets, 18 U.S.C. §§ 1836, *et. seq.*)

58.     Plaintiffs incorporate all the above allegations as if rewritten herein.

59.     The information to which Defendants had access as described in this Complaint constitutes trade secrets within the meaning of 18 U.S.C. § 1839(3) and § 1333.61(D) of the Ohio Revised Code.

60.     Plaintiffs have taken reasonable measures to keep such information secret.

61.     Defendants misappropriated Plaintiffs' trade secrets relative to Barrio's products and business, including scientific, technical and economic information, including pricing, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures and programs related to its current and future business plans by, among other things, retaining and using confidential, proprietary and trade secret information to the detriment of Plaintiffs.

62.     Upon information and belief, Defendants have further misappropriated Plaintiffs' trade secrets related to products or services used in, or intended for use in, interstate or foreign commerce by, among other things, improperly obtaining and retaining said information and using or disclosing Plaintiffs' confidential, proprietary and trade secret information to further his business interests to gain an unfair advantage.

63.     Defendants' misappropriation of trade secrets allows for temporary and permanent injunctive relief.

14

64. As a direct and proximate result of Defendants' misappropriation of Plaintiffs' trade secrets, the latter will lose its competitive position, goodwill, sales and its investment of time and energy in generating its protected information.

65. As a direct and proximate result of Defendants' actions, Plaintiffs have and will continue to suffer irreparable harm if Defendants are not: 1) enjoined and restrained from using and disseminating Plaintiffs' confidential and privileged information; and 2) required to immediately return all of Plaintiffs' property and information.

66. As a direct and proximate result of Defendants' actions, Plaintiffs have and will continue to be damaged, in an amount to be proven at trial.

**COUNT TWO**
**(Trade Dress Infringement and Unfair Competition, 15 U.S.C. §§ 1125,** *et. seq.***)**

67. Plaintiffs incorporate all the above allegations as if rewritten herein.

68. Plaintiffs own protectable rights, inherently distinctive to, and synonymously associated with, Barrio.

69. The Barrio trade dress is non-functional, unique and distinctive as to the source of the restaurant, its products and services, and has acquired secondary meaning, because consumers associate Plaintiffs as the source of the restaurant and its products and services provided under the Barrio trade dress. The Barrio trade dress is entitled to protection under both federal and common law.

70. Defendants have made unauthorized use of Barrio's distinctive trade dress in their own restaurant including but not limited to: various features of symbolism, advertisement and art including size, shape, color or color combinations, texture, graphics, menus, products, management, training, pricing and sales techniques, such that Condado's essentially encapsulates the total image and overall appearance and function of Barrio.

15

71.     Defendants have done so in order to create confusion, cause mistake and to deceive as to the affiliation, connection or association of and between Condado and Barrio or as to whether Condado's has Plaintiff's sponsorship, endorsement, or approval.

72.     Defendants' continued operation of competitive businesses constitutes unfair competition, false designation of origin, and false or misleading descriptions or representations of fact.

73.     Defendants' acts, practices and conduct are likely to cause confusion or mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C. § 1125(a).

74.     The acts of Defendants were intentional, willful, with bad faith, and were committed with the intention of deceiving and misleading the public and causing harm to Plaintiffs and made with the full knowledge of Plaintiff's intellectual property rights.

75.     By doing so, Defendants have improperly gained an advantage at the expense of and detriment to Plaintiffs.

76.     As a direct and proximate result of Defendants' unfair competition, Plaintiffs have been, and will continue to be, substantially injured in their business, including their goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

77.     Plaintiffs have no adequate remedy at law because the misappropriated trade dress is unique and represent to the public Plaintiffs' identity, reputation and goodwill such that damages alone cannot fully compensate Plaintiffs for Defendants' misconduct.

78.     Unless enjoined by the Court, Defendants and those acting in concert with them will continue to compete unfairly with Plaintiffs to the irreparable injury of Plaintiffs.  This threat

of future injury to the business identity, goodwill, and reputation of Plaintiffs requires injunctive relief to prevent Defendants' continued unfair competition, and to ameliorate and mitigate Plaintiffs' injuries.

## COUNT THREE
### (Breach of Contract)

79.     Plaintiffs incorporate all the above allegations as if rewritten herein.

80.     On August 11, 2014, the Parties to the 2013 Litigation entered into the RSA.  The RSA is not attached due to the inclusion of a Confidentiality Provision therein.

81.     The Plaintiffs, *to wit,* Leneghan, Fairbairn, Tres Amigos and Justin Hughes, fully performed each of their obligations arising under the terms of the RSA.

82.     Pursuant to the terms of the RSA, Defendant Kahn and Cassyck (referenced in the RSA as the "Kahn Parties") the "Kahn Parties" "shall be forever prohibited from owning, conducting or engaging in an business activities under the trade-name of "Barrio" and shall be prohibited from utilizing any logo, trade mark or service mark associated with "Barrio" including the phrase 'in the heart of...' RSA at ¶8.

83.     In addition, Kahn and Cassyck further agreed in the RSA that they would not disclose or disseminate any trade secrets of the "Leneghan Parties," which is a defined term including Leneghan, Justin Hughes, and Tres Amigos. RSA at ¶10.

84.     Notwithstanding the express prohibitions against Defendants Kahn and Cassyck utilizing, disclosing or disseminating the trade secrets of Leneghan, Justin Hughes, and Tres Amigos, Defendant Kahn and/or Cassyck breached the terms of the RSA by, amongst other things, utilizing and disseminating certain confidential trade secrets and trademarks belonging to Leneghan, Justin Hughes and Tres Amigos and is utilizing such intellectual property, trade dress, and trade secrets in conducting the business operations of Condado Tacos.

17

85.     In breach of the terms and conditions of the RSA, in or about August or September, 2014, immediately after entering into the RSA, Defendant Kahn formed Revolucion, LLC, registered "Condado Tacos" as a registered trade name, and started a Mexican restaurant utilizing the Barrio trade secrets and trade dress, *to wit,* each Condado's is designed around the same "Day of the Dead" theme utilized by Barrio, uses the same street art restaurant décor utilized by Barrio and is identical to Barrio's.

86.     Moreover, Defendants further breached the RSA by utilizing the Plaintiffs' confidential trade secrets, including recipes, menu design, art work and pricing, amongst other things, all in breach of the RSA.

87.     As a direct and proximate result of Defendants' multiple and ongoing breaches of the RSA, Plaintiffs have sustained money damages, will lose its competitive position, its goodwill and its investment in time and energy in generating its protected information.

88.     As a direct and proximate result of Defendants' actions, Plaintiffs have and will continue to suffer irreparable harm if Defendants are not: 1) enjoined and restrained from using or disseminating Plaintiffs' confidential and privileged information; and 2) required to immediately cease and desist their unauthorized use and dissemination of Plaintiffs' confidential and privileged information.

89.     As a direct and proximate result of Defendants' actions, Plaintiffs have and will continue to be damaged, in an amount to be proven at trial.

### COUNT FOUR
### (Misappropriation of Trade Secrets Act, Ohio R.C. §§ 1333.61, *et. seq.*)

90.     Plaintiffs incorporate all the above allegations as if rewritten herein.

91.     Some of the information obtained by one or more of the Defendants constitutes protected trade secrets under Ohio law.

92.     The protected information was obtained with full knowledge that it was confidential, protected and would remain as such.

93.     The RSA signed by Kahn contained provisions prohibiting the use of the protected information.

94.     Defendants have individually, jointly and collectively misappropriated Plaintiffs' trade secrets and unlawfully used the information for Defendants' benefit.

95.     Defendants' actions constitute a breach of the RSA and is in violation of the Ohio Trade Secrets Act. Ohio Rev. Code §§ 1333.61, *et. seq.*

96.     As a direct and proximate result of Defendants' violations, Plaintiffs have been damaged in an amount to be proven at trial.

97.     Defendants' continued violations poses a real and substantial threat continued disclosure and use of Plaintiffs' trade secrets, such that warrants injunctive relief pursuant to Ohio Rev. Code § 1333.62. In the absence of injunctive relief, Plaintiff' will be irreparably harmed.

## COUNT FIVE
### (Unfair Competition and Deceptive Trade Practices, Ohio R.C. §§ 4165.02, *et. seq.*)

98.     Plaintiffs incorporate all the above allegations as if rewritten herein.

99.     Defendants' actions described herein have caused and continue to cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services between Barrio and Condado.

100.    Defendants' actions have also caused and continue to cause confusion or misunderstanding as to Condado's affiliation, connection, or association with, or certification by Barrio.

101.    Defendants have used and continue to use deceptive representations in connection with goods or services such as to create confusion between Barrio and Condado.

102.    Defendants' actions violate Ohio's Deceptive Trade Practices Act, which prohibits a person from engaging in deceptive trade practices which cause a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services and/or which confuse the affiliation, connection, or association with or certification by another.

103.    Upon information and belief, Defendants knew that their actions whereby they mimicked key aspects of Barrio would create confusion and mislead customers into believing there was a connection with Condado.

104.    As a direct result of Defendants' intentional misappropriation and unfair competition, Plaintiffs are entitled to damages in an amount to be determined at trial plus injunctive relief to prevent further confusion and/or dilution of Plaintiffs' trade dress.  Plaintiffs are also entitled to statutory relief including reasonable attorney's fees

## COUNT SIX
### (Unjust Enrichment)

105.    Plaintiffs incorporate all the above allegations as if rewritten herein.

106.    Defendants have received an untoward benefit by their misappropriation of trade secrets and trade dress as well as their breach of the RSA and tortious interference.

107.    At all times relevant Defendants had knowledge of the benefit conferred from their misappropriation, breach and tortious interference.

108.    Defendants have been and continue to be unjustly enriched by their misappropriation, breach and tortious interference.

109.    As a result of Defendants' unjust enrichment, the Plaintiffs has and continues to be damaged in an amount to be proved at trial.

110.    Plaintiffs are entitled to recover from Defendants the gains, profits, advantages and all other unjust enrichment the latter have obtained as a result of their unlawful and wrongful acts.

### COUNT SEVEN
### (Tortious Interference - Business Relationship
### Against Defendants Adams and DeSantis)

111.    Plaintiffs incorporate all the above allegations as if rewritten herein.

112.    Plaintiffs and Joseph Kahn had a business relationship with respect to the ownership and operation of Barrio.

113.    Upon information and belief, Defendants Jon Adams and Tom DeSantis were aware of the aforementioned business relationship.

114.    Upon information and belief, Defendants Jon Adams and Tom DeSantis intentionally interfered with the business relationship such as to cause a breach thereof.

115.    Upon information and belief, Defendants Jon Adams and Tom DeSantis intentionally caused a breach and termination of the aforementioned business relationship.

116.    Plaintiffs were damaged as a proximate result of the tortious interference with the aforementioned business relationship by Defendants Jon Adams and Tom DeSantis in an amount to be proven at trial.

117.    Plaintiffs are also entitled to punitive damages and attorney's fees as a result of the tortious interference of Defendants Jon Adams and Tom DeSantis.

### COUNT EIGHT
### (Tortious Interference – Contract
### Against Defendants Adams and DeSantis)

118.    Plaintiffs incorporate all the above allegations as if rewritten herein.

119.    Plaintiffs and Joseph Kahn had a valid contract governing their business relationship ("Contract").

120. Upon information and belief, Defendants Jon Adams and Tom DeSantis were aware of the Contract.

121. Upon information and belief, Defendants Jon Adams and Tom DeSantis intentionally procured the breach of the contract.

122. Upon information and belief, Defendants' actions in this regard were malicious, willful, reckless, in bad faith and unjustified.

123. The actions of Defendants Jon Adams and Tom DeSantis did in fact result in Kahn's breach of the RSA and applicable laws, as noted herein.

124. Plaintiffs were directly and proximately damaged by the tortious interference of, and breach procured by, Defendants Jon Adams and Tom DeSantis in an amount to be proven at trial.

125. Plaintiffs are also entitled to punitive damages and attorney's fees as a result of the tortious interference of Defendants Jon Adams and Tom DeSantis.

## COUNT NINE
### (Temporary and Permanent Injunction)

126. Plaintiffs incorporate all the above allegations as if rewritten herein.

127. Defendants are improperly using or disclosing Plaintiffs' confidential information and trade secrets in violation of the RSA and applicable State and Federal laws.

128. Unless Defendants are restrained or enjoined from continuing in the behavior listed herein, Plaintiff will suffer and continue to suffer immediate and irreparable harm, including but not limited to loss of customer relationships, loss of brand identification, loss of sales, and misappropriation of confidential information and trade secrets, all of which are not compensable in money damages.

129.    A trial court is authorized to enjoin the prohibited activity for the full restricted period beginning from the date of the Court's Order.  *See Rogers v. Runfola & Assoc, Inc*., 57 Ohio St. 3d 5, 9 (Ohio 1991).

130.    In addition to damages arising from the Defendants' violations and breaches, Plaintiffs are entitled to a temporary and permanent injunction enjoining the Defendants from continuing said conduct.

WHEREFORE, Plaintiffs respectfully request the Court enter an order: temporarily enjoining Defendants from disseminating and using Plaintiffs' confidential and privileged information; awarding Plaintiffs damages proximately and directly caused by Defendants' misappropriation and breaches; and such other relief in Plaintiffs' favor that the Court deems just and required under the circumstances of this case.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray for the following relief against Defendants:

1.    An order requiring Defendants to immediately comply with their contractual post-termination obligations under the RSA, including, without limitation, their obligations to return all protected information to Plaintiffs;

2.    A preliminary and permanent injunction enjoining Defendants, their agents, servants, and employees, and those people in active concert or participation with them from:

- (a) Misappropriation of Plaintiffs' trade secrets and protected information;

- (b) Infringing Plaintiffs' trade dress and otherwise passing any existing or future restaurant off as affiliated with or sponsored by Plaintiffs;

- (c) Causing a likelihood of confusion or misunderstanding as to their affiliation, connection, or association with Barrio or any of the latter's products or services; and

- (d) Unfairly competing with Plaintiffs in any manner;

3.    A preliminary and permanent injunction enjoining Defendants from opening, or continuing to operate any Condados or other Barrio's style restaurant, or any other restaurant that utilizes Barrio's trade secrets or trade dress;

4.    An order pursuant to 15 U.S.C. § 1118 that Defendants remove from all Condado's (both interior and exterior) all labels, signs, prints, packages, wrappers, receptacles, logo items, and advertisements that are Barrio's trade secrets or trade dress or that create confusion with the latter and deliver to Plaintiffs all of the same that are in the possession of Defendants, their affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation with them at Defendants' cost;

5.    An order that Defendants, at their own cost, be required to promptly eliminate their advertising under any confusingly similar designations to that of Barrio from all media including, but not limited to, newspapers, flyers, coupons, promotions, signs, menus, telephone books, telephone directory assistance listings, and mass mailings;

6.    An order that Defendants be required to file with the Court and to serve upon Plaintiffs' counsel within ten days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

7.    An order 1) declaring that Defendants hold in trust, as constructive trustees for the benefit of Plaintiffs, their illegal profits obtained from their infringing sales, and 2) requiring

Defendants to provide Plaintiffs a full and complete accounting of all amounts due and owing to Plaintiffs as a result of Defendants' illegal activities, and 3) requiring that Defendants pay over to Plaintiffs all gains, profits and advantages derived by them as a result of their misappropriation, breach of contract and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law;

8.      An order requiring Defendants to pay to Plaintiffs such damages, as the latter have sustained by reason of Defendants' misappropriation, breach of contract, unfair competition and violation of the Ohio Consumer Protection Act;

9.      An order awarding Plaintiffs treble damages resulting from Defendants' willful and intentional conduct pursuant to 15 U.S.C. §1117 and 35 U.S.C. §284 and 289 and under Ohio law;

10.     An order awarding Plaintiffs punitive and exemplary damages as permitted by Ohio law;

11.     An award of Plaintiffs' costs and expenses, including reasonable attorney's fees, incurred in connection with this action as provided for by statute and the RSA;

12.     An award of prejudgment interest; and

13.     Such other and further relief as the Court deems just and proper.

Respectfully submitted,
*/s/Samuel J. Lauricia III*
**SAMUEL J. LAURICIA III (0078158)**
**RANDY L. TAYLOR (0069529)**
**SCOTT J. ORILLE (0069192)**
Weston Hurd LLP
1301 East 9th Street, Suite 1900
Cleveland, Ohio 44114
Telephone:  (216) 241-6602
Facsimile:   (216) 621-8369
E-mail: SLauriciA@westonhurd.com
          RTaylor@westonhurd.com
          SOrille@westonhurd.com
*Counsel for Plaintiffs*

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure the Plaintiffs hereby demand a trial by jury with the maximum number of jurors allowed at law on all issues triable by the right of a jury.

*/s/ Samuel J. Lauricia III*
**SAMUEL J. LAURICIA III (0078158)**
**RANDY L. TAYLOR (0069529)**
**SCOTT J. ORILLE (0069192)**
Weston Hurd LLP
1301 East 9th Street, Suite 1900
Cleveland, Ohio 44114
Telephone:  (216) 241-6602
Facsimile:   (216) 621-8369
E-mail: SLauriciA@westonhurd.com
           RTaylor@westonhurd.com
           SOrille@westonhurd.com
*Counsel for Plaintiffs*