**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BARRIO BROS., LLC, ET AL., | ) | CASE NO.: 1:18-CV-02052-CAB |
| | ) | |
| Plaintiffs, | ) | JUDGE: CHRISTOPHER A. BOYKO |
| | ) | |
| -v- | ) | **PLAINTIFFS' MOTION FOR TEMPORARY** |
| | ) | **RESTRAINING ORDER AND PRELIMINARY** |
| REVOLUCION, LLC, ET AL., | ) | **INJUNCTION** |
| | ) | |
| Defendants. | ) | |

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs[1] (collectively referenced herein as "Barrio Bros.") hereby move this Honorable Court for a Temporary Restraining Order and Preliminary Injunction enjoining the Defendants[2] from expanding their willful, intentional and ongoing infringement and use of Barrio Bros. distinctive trade-dress.  Specifically, Barrio Bros. request the Court to restrain and enjoin Defendants from opening any new Condado and/or similar restaurants until the within suit is resolved.

Barrio Bros. brings this action and this motion to prevent the proposed expansion of irreparable harm that will be caused by the Defendants' continued infringement and use of Barrio

---

[1] *Barrio Bros., LLC; Justin Hughes, LLC; Tres Amigos Lakewood, LLC; Mr. Thomas Leneghan* ("Leneghan") and *Mr. Sean Fairbairn* (collectively "Plaintiffs" or "Barrio Bros.").

[2] "Defendants" collectively refers to: Revolucion, LLC; Revolucion Holdings, LLC (collectively "Revolucion"); Cassyck, LLC; Joseph Kahn ("Kahn"); Condado Tacos 1-6, LLCs ("Condado Tacos"); Jonathan Adams ("Adams"); and Thomas DeSantis ("DeSantis").

Bros. trade-dress and/or trade secrets in the proposed new Condado Taco locations, including the

proposed new Condado Taco location in the Cleveland, Ohio market.[3]

 The reasons for this Motion are detailed in the attached Memorandum in Support.

   Respectfully submitted,

   */s/Samuel J. Lauricia III*
   **SAMUEL J. LAURICIA III (0078158)**
   **RANDY L. TAYLOR (0069529)**
   **SCOTT J. ORILLE (0069192)**
   Weston Hurd LLP
   1301 East 9th Street, Suite 1900
   Cleveland, Ohio 44114
   Telephone:  (216) 241-6602
   E-mail: SLauricia@westonhurd.com
     RTaylor@westonhurd.com
     SOrille@westonhurd.com
   *Counsel for Plaintiffs*

---

[3] *See* October 31, 2018, Press Release. See **Exhibit A**. Defendants' counsel agreed that the Pinecrest location would not be opened in light of the pending suit and during which the parties were engaged in settlement negotiations. Defendants reneged just as Kahn had done in the past.

**MEMORANDUM IN SUPPORT**

I.    NATURE OF THE CASE & THE RELIEF REQUESTED.

Barrio Bros. seeks to enjoin Kahn and the remaining Defendants acting in concert with him, from expanding the willful and intentional infringement on the Barrio Bros. inherently distinctive trade dress by opening additional locations.

In 2012, Thomas Leneghan founded in the Tremont neighborhood of Cleveland, Ohio, a "neighborhood" taco restaurant known as "Barrio," which serves build-your-own tacos, using fresh local ingredients and featuring an inherently distinctive trade dress, more fully described herein.

Kahn was previously a 6% shareholder in Justin Hughes, LLC (which owns the Tremont Barrio).  Kahn's employment from Barrio was terminated in September 2013 and Kahn surrender his equity positions in Justin Hughes, LLC and Tres Amigos, LLC (which owns Barrio Lakewood) in 2014, after a shareholder dispute between him and Leneghan resolved pursuant to the terms of a Release and Settlement Agreement (the "RSA").  The RSA recognizes Kahn's ability to open his own Mexican "themed" restaurant.[4]  However, the RSA expressly prohibits Kahn from infringing on Barrio's intellectual property.  The RSA also expressly prohibits Kahn from associating his new restaurant with Barrio, creating confusion as to the origin of his products and services and from utilizing Barrio's marks.

Notwithstanding these express prohibitions, Kahn and his partners, Messrs. Jon Adams and Tom DeSantis, based their Condado Taco's restaurants on the inherently distinctive trade dress and trade secrets of the prior established Barrio restaurants. Kahn, along with the Co-Defendants,

---

[4] Plaintiffs acknowledge that the RSA permits Defendants to operate a Mexican themed restaurant utilizing a "build your own" concept.  Plaintiffs recognize "build your own" is a trending concept adopted by other restaurants.  However, the RSA expressly protects Barrio's intellectual property, as does federal and state law.  Notwithstanding the preceding, it is noteworthy that Kahn, himself, originally alleged in the shareholder dispute that the "concept" belonged to Barrio, a concept that Kahn acknowledges is "unique."  See https://www.trendhunter.com/trends/condado-tacos, an article published in June 2018 in conjunction with Condado's second Pittsburgh location, the first of which opened in 2017.  This is the same "concept" Barrio created and Condado later misappropriated. Kahn "knew [the concept] would be a huge success" when he "took" it to Columbus as he had seen it happen first-hand, at Barrio.  See Kahn statement to Cleveland.com article.

violated the terms of the RSA. By doing so, Defendants also willfully and intentionally infringed upon the Barrio marks and intellectual property in violation of the Lanham Act and the United States Supreme Court's ruling in *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763 (1992).

The Plaintiffs respectfully request that this Honorable Court issue a Temporary Restraining Order and Preliminary Injunction (and eventually a Permanent Injunction) that prohibits the Defendants their agents, servants, employees and those people in active concert or participation with them from continuing the use of the Barrio Bros. trade dress by enjoining them from opening any additional Condado Tacos restaurants based on, utilizing, or deploying the Barrio trade dress.

II.    <u>STATEMENT OF THE FACTS.</u>

The facts set forth herein are taken from the affidavit of Thomas Leneghan, attached hereto as ***Exhibit B***.

*A.*
<u>*CREATING BARRIO*</u>

In or about 2012, Leneghan developed the concept of a unique build-your-own taco restaurant, which would later become "Barrio." The word barrio is Spanish, meaning "neighborhood". Mr. Leneghan believed that the Tremont, Ohio, neighborhood was the perfect place for his idea of a trendy, "hipster," build-your-own taco restaurant, with related Mexican cuisine items in a lively, identifiable, yet unique atmosphere.

Leneghan owns an Ohio limited liability company known as Sandy Banks, LLC, (a non-party to this action). At all relevant times, Sandy Banks owned the real property at 806 Literary Road in the Tremont neighborhood of Cleveland, Ohio (the "Literary Road Property"). Leneghan sought to locate his new Mexican restaurant at the Literary Road Property.

Prior to opening the first Barrio restaurant, Kahn approached Leneghan about renting the Literary Road Property for a market-style restaurant.[5] Kahn represented to Leneghan that the former had particular expertise, knowledge and skills as a restauranteur and that he wanted to copy a restaurant located in Indianapolis, Indiana, called "Goose the Market" and situate the knock-off restaurant at Mr. Leneghan's Literary Road Property.

Mr. Leneghan rejected Kahn's solicitation to rent the Literary Road Property for the "Goose the Market" knock-off. Mr. Leneghan also informed Kahn of his own plans to utilize the Literary Road Property for the establishment of a unique, readily identifiable, build-your-own taco restaurant, which would later become Barrio.

Based on his represented expertise in the restaurant industry, Leneghan offered Kahn the opportunity to buy-into Justin Hughes, LLC, the Ohio business entity which came to own and operate the first Barrio restaurant. Leneghan also offered Kahn the ability to participate in the management of Barrio. Kahn accepted. As a result, Kahn was intricately involved in Barrio, having full access to all of the trade secrets thereof. Kahn obtained intimate knowledge of the trade dress that makes Barrio a huge success. In 2012, the first Barrio restaurant ("Barrio Tremont") opened at the Literary Road Property. Kahn acquired a 6% ownership interest in Justin Hughes, LLC, pursuant to the terms of the latter's Operating Agreement.

### B.
### BARRIO TRADE DRESS

Mr. Leneghan created the look and feel of Barrio, which is unique and clearly identifiable to any customer walking in the door.[6] The Barrio restaurants are identified by an amalgamation of ideas and processes that create a lively, energetic, customer-friendly, environment through which

---

[5] While not relevant to the issue presented herein, the "market-style" concept was substantially different than the Barrio and Condado restaurants.

[6] This is the same look and feel that Kahn admitted would be a huge success in Columbus. Thus Kahn took it to Columbus, misappropriating Barrio trade secrets and trade dress via the creation of Condado.

patrons can create in excess of 3,000,000 different taco concoctions as they desire, or rely on the Barrio recommended concoctions.  Each Barrio restaurant is decorated with large street style/graffiti murals painted throughout and featuring a Mexican "Day of the Dead" them.  The interior walls of the Barrio restaurants are covered in large murals of animated skull and skeleton designs.  The Day of the Dead theme is based on a fictious family that grows with each new Barrio location.

Servers are informally dressed in street clothes (not uniforms) and the furnishings are simple unclothed tables and chairs.  On each dining table, customers will find a table caddy that holds a roll of brown paper towels in lieu of napkins, a long, narrow pad of paper displaying a scantron-style menu and several pre-sharpened pencils.  A true and accurate copy of the Barrio menu compared side-by-side with the Condado menu is attached hereto as ***Exhibit C.***

As illustrated by the attached Barrio menu, the customers are able to build their own tacos. The menu has seven sections: Tortillas; Protein; Cheese; Toppings; Salsa; Sauces; and Sides. In each section are relevant fresh taco ingredients for the customer to select.  To the right of each ingredient choice are circles that the customer can use the provided pencil to fill in if he/she wants that ingredient on a taco.  A customer can create up to two custom tacos on each menu form.  The custom tacos are then served street-style as they are wrapped in foil and served with tortilla chips in rectangular paper food trays and plastic baskets accompanied with a disposable spork. Guacamole, salsa and queso, if ordered, are served in black, caldron-style, bowls.  The customer can alternatively select from Barrio recommended concoctions, including the taco of the month. Alcoholic beverages, such as craft brews and specialty margaritas, are served in mason jars.

Barrio quickly became a popular and unique restaurant in the Cleveland-area market. In 2013, Mr. Leneghan established a second Barrio location in Lakewood, Ohio, ("Barrio Lakewood") which was/is owned and operated by Co-Plaintiff Tres Amigos, LLC.  The initial member of Tres Amigos was Mr. Leneghan.  However, Sean Fairbairn ("Fairbairn") and Kahn would each acquire 25% of Tres Amigos upon the business achieving certain designated milestones. *Tres Amigos Operating Agreement at Section 7.1.*

In addition to Barrio Tremont and Barrio Lakewood, Barrio Bros. owns, through separate single purpose limited liability companies, four additional Barrio restaurants in: Cleveland Heights, Ohio; Willoughby, Ohio; and the Gateway District of Cleveland, Ohio. In addition, Barrio Bros. has an ownership interest in a Barrio restaurant located in Portsmouth, New Hampshire. Further, several other new Barrio locations are being considered and pursued, including corporate stores and franchising on a national level. All Barrios, including Barrio Tremont and Barrio Lakewood, are referred to collectively herein as "Barrio".

Fairbairn and Leneghan are the sole members of Barrio Bros. and Fairbairn is the operator in charge of each Ohio Barrio location. Barrio has received many accolades including one of the "25 Best Things to do in Cleveland, Ohio"; one of the "Top 10 Taco Stands in America"; the "Best Mexican Restaurant" in Ohio; and "Best Restaurant in Downtown Cleveland", among others.

### C.
### THE 2013 STATE COURT LITIGATION AND THE SETTLEMENT AGREEMENT

In or about 2013, a shareholder dispute arose between Leneghan and Kahn resulting in the latter commencing a civil lawsuit styled as *Cassyck, LLC, et al. v. Leneghan, et al., Cuyahoga County Court of Common Pleas Case No. CV-13-814559* ("2013 State Court Litigation"). Therein, Kahn alleged that the build-your-own taco concept was a life-long concept that he developed. Leneghan and associated defendants vehemently disputed this allegation.[7] The dispute resolved via the RSA.

Pursuant to the terms of the RSA, Kahn was permitted to open a Mexican restaurant. However, Kahn and Cassyck, LLC, relinquished all ownership in Barrio and they were prohibited from utilizing the Barrio name, trademarks, service marks and logos. The RSA further prohibited Kahn and Cassyck, LLC, from using, disclosing or disseminating Barrio's trade secrets. Simply put, the RSA

---

[7] Notwithstanding any dispute as to the creation of the "concept", of significance is Kahn's claim that he contributed to the creation of the Barrio "concept". Moreover, as a matter of law the creation of the "concept" is not relevant as the Barrio trade dress did not exist until the build-your-own taco "concept" was implemented in the look, feel, environment and manner that all customers have come to recognize as distinct to Barrio.

paid homage to federal and state law by explicitly restricting Kahn and Cassyck, LLC, from infringing upon Barrio's intellectual property at any time.

However, unbeknownst to Plaintiffs, Kahn had no intention of complying with the RSA in spite of assurances the latter made during negotiating the terms of the RSA. Prior to signing the RSA, Kahn had already began secretly planning to misappropriate Barrio's intellectual property. In furtherance of his scheme, Kahn had engaged in secret negotiations and an agreement with his current business partners, Adams and DeSantis.

Kahn, with the assistance of Adams and DeSantis, proceeded to copy Barrio's trade dress and infringe upon the latter's intellectual property when opening the Columbus-based Condado Tacos in November 2014, a mere two months after executing the RSA. In fact, Kahn recently admitted to intentionally taking Barrio's trade dress to Columbus, since he knew it would be a success. More recently, in 2017 and 2018, Kahn, together with the other Defendants, recently expanded to other locations in: Columbus, Cincinnati, Pittsburgh, Indianapolis and soon to be Cleveland.

### D.
#### THE CONDADO TRADE DRESS

The RSA expressly prohibits Kahn and Cassyck, LLC, from utilizing, disclosing, or disseminating Barrio's trade secrets; and utilizing the trademarks, service marks and logos of Barrio. In breach thereof, Kahn in fact stole, disseminated, used and is using Barrio's intellectual property as the basis for Condado Tacos, an entity separate and apart from Kahn, who himself is a partner with the other individual Defendants named herein.

Specifically, Condado Tacos improperly misappropriated the Barrio's trade dress and trade secrets such that patrons walking in the door are likely to be, and have been, confused as to the connection, association, sponsorship and/or affiliation between Condado Tacos and Barrio Bros. Defendants knowingly misappropriated Barrio's intellectual property, thereby unfairly competing with Barrio in a market that Defendants knew would be successful. This was evident by the number of Cleveland residents that attend The Ohio State University, a known target customer base of the

Barrio brand.  With this immediate success, in 2017, Condado incrementally encroached on the Barrio brand markets utilizing Barrio's trade dress, trade secrets and other intellectual property.

The minute a patron walks into a Condado, he/she is immersed in an atmosphere and embarks on a dining experience that has the look and feel of Barrio.[8] Not only are the ingredients extraordinarily similar if not identical to those of Barrio, the Condado restaurants are decorated with large street style murals either prominently or exclusively featuring the Day of the Dead theme just like Barrio. Moreover, patrons order from preprinted menus virtually identical to Barrio's, placed at every table together with pre-sharpened pencils.[9]  The custom created tacos are served in a similar manner right down to the plastic spork placed in every basket serving foil wrapped tacos. *Id*. Moreover, prior to a customer even walking into a Condado restaurant there is customer confusion and the expectation of a Barrio experience as Defendant Kahn markets each Condado restaurant by announcing that he was a co-founder of Barrio, thus, demonstrating the deliberate attempt to create customer confusion vis-à-vis brand association.

To further illustrate this point, consumers have come to recognize the concept of sister restaurants.  Locally in Cleveland, Ohio Mexichef Restaurants, Inc. owns and operates two Mexican restaurants, Mamocho in Ohio City and El Carnicero in Lakewood.  Although the two restaurants operate under wholly separate trade-names, the sister status of the restaurants is clear based on the similarities of the menus, copies of which are attached hereto as ***Exhibit D.***  Likewise, the Defendants have intentionally created the same look and feel as Barrio in a deliberate attempt to create customer confusion as to the association between Condado and Barrio.

---

[8] Kahn himself recently admitted as much when providing a statement to the Cleveland Plain dealer. While Kahn may be "upfront about those facts," as set forth herein, the law prohibits intentional misappropriation of the intellectual property of another.

[9] But for the name at the top of the checklist, which in and of itself is similar to the Barrio design, one would not know if the menu is that of Barrio or Condado. The menus and items thereon, including the arrangement of such items, are virtually identical.

Prior to receiving their custom designed taco, patrons are provided chips and salsa and libations each served in a confusingly similar fashion as though the patron was at Barrio. Further, in lieu of a napkin the patron has an available roll of brown paper towels at strategic locations, just like Barrio.  And all staff are in street clothes to maintain the same trendy atmosphere owned and established by Barrio. Even the name Condado creates confusion, as it roughly translates to "county." Thus, instead of being located "in the heart of" the neighborhood (Barrio), Condado is "in the heart of" the county.

Early on after Kahn opened "his" original Condado restaurant in Columbus, Barrio Bros. confirmed that Kahn did not call his restaurant "Barrio." Beyond that, Barrio Bros. had a right to, and did believe that, Kahn would abide the terms of the RSA.  After all, Kahn promised Barrio Bros. just a mere two months earlier through representation and warranties that he would not be misappropriating Barrio's protected trade secrets and trade dress.

Accordingly, Plaintiffs thought only of continued expansion into new markets based on the identifiable brand it established, from the ground up.  This is especially the case for similar markets in the tri-state area, e.g., Buffalo, Pittsburgh, Columbus, Cincinnati, etc. While expanding itself, in 2017, Plaintiffs became aware that Condado Tacos also was expanding.

It was only when DeSantis approached Leneghan about acquiring Barrio that raised suspicions. Thereafter, Plaintiffs began investigating Condado Tacos, since it was perplexing why Kahn's "Mexican themed restaurant" would want to acquire Barrio's universally accepted unique brand.  Moreover, Leneghan understood that Kahn did not have the financial solvency to rapidly expand as Condado Taco did in 2017.  Thus, the fact that DeSantis approached Leneghan in 2018 caused the latter to realize that Kahn and the other Defendants were working together and that this was likely the case prior to the RSA.  This leads to the present lawsuit, and the request for injunction which should be granted based on the law and facts set forth herein.

10

III.   **LAW & ARGUMENT.**

A.   **THE PRELIMINARY INJUNCTION STANDARD.**

To prevent the Defendants from causing Barrio Bros. further irreparable harm, this Court should issue an immediate order enjoining the Defendants from continuing to use and infringe upon Barrio Bros. inherently distinctive trade dress at all proposed future Condado Taco locations, including the proposed Cleveland, Ohio location.

To prevail on a Motion for Temporary Restraining Order and Preliminary Injunction the moving party must demonstrate the following factors: (1) a likelihood of success on the merits of its claims; (2) a likelihood that irreparable injury will occur if injunctive relief is not granted; (3) that the balance of equities favors injunctive relief; and (4) that issuing an injunction advances the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2009); *Trebro Mfg., Inc. v. Firefly Equip., LLC et. al.*, 748 F.3d 1159, 1165 (Fed. Cir. 2014). For a temporary restraining order, the requesting party must also provide: (1) an affidavit or a verified complaint with specific facts that clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) certification in writing of efforts made to give notice to the adverse party and the reasons why notice should not be required. Fed.R.Civ.Proc. 65(b)(1).

As demonstrated in the attached affidavit of Mr. Leneghan and in the following sub-sections, the Plaintiffs' have satisfied each of the elements necessary for a Temporary Restraining Order and Preliminary Injunction.

B.   **THE PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR CLAIMS.**

The Plaintiffs have asserted in this action claims pursuant to §43(a) of the Lanham Act, codified as 15 U.S.C. §1125(a), as a result of Condado Taco's infringing on Barrio Bros. inherently distinctive trade dress. It is well settled that the trade dress of a restaurant is protected under §43(a) of the Lanham Act based on a finding of inherent distinctiveness or acquired secondary meaning. *See, Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992).

To this point, the United States Supreme Court has recognized that the trade dress of a restaurant is a form of unregistered trademark serving as a "representation or designation" of product source under §43(a) of the Lanham Act with the same protections afforded a registered trademark. *Id.* at 787. A restaurant claiming protection for its trade dress claims as its mark the particular combination and arrangement of design elements that distinguish it from others using the same concept. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826, F.2d 837, 842 (9th Cir., 1987). More specifically, the Ninth Circuit Court of Appeals states as follows:

> A restaurant claiming protection for its trade dress 'claims as its mark the particular combination and arrangement of design elements' that distinguish it from others using the same concept. [Citation omitted]. A restauranteur cannot prevent others from using any particular color or feature, but can protect a combination of visual elements 'that, taken together,... may create a distinctive visual impression.' [*Id*.]

In *Two Pesos,* the Taco Cabana Mexican trade dress was described as follows:

> [A] festive eating atmosphere having interior dining and patio areas decorated with artifacts, bright colors, paintings and murals. The patio includes interior and exterior areas with the interior patio capable of being sealed off from the outside patio by overhead garage doors. The stepped exterior of the building is a festive and vivid color scheme using top border pain and neon stripes. Bright awnings and umbrellas continue the theme. [*Two Peso, supra*, at 621.]

Thus, while Taco Cabana cannot claim as its protected trade dress bright colors, patio seating, or Mexican paintings on the walls, the combination and arrangement of these visual elements can be deemed inherently distinctive such that it serves as a representation or designation as to source of a product or service.

The late Justice Scalia in his Concurring Opinion in *Two Pesos, supra,* aptly summarized the requirements for a trade dress infringement claim as follows:

> The federal courts are in agreement that §43 creates a federal cause of action for trademark and trade dress infringement claims. [Citation omitted]. They are also in agreement that the test for liability is likelihood of confusion: 'Under the Lanham Act [§43(a)], the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks... Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a 'likelihood of confusion?" And the Circuits are in general agreement, with perhaps the exception the Second Circuit, that secondary meaning need not be established once there is a finding of inherent distinctiveness in order to establish a trade dress violation under §43(a). [*Id*. at 780.]

12

As applicable to the present case, there can be no genuine dispute that Barrio Bros. created and deployed in its restaurants a combination of visual elements which, *when taken together*, is inherently distinctive and, thus, protectable trade dress under the Lanham Act.  Specifically, each Barrio location is decorated with large street style murals featuring a "Day of the Dead" theme.  The street artist murals featuring animated skull and skeleton designs are found painted on the walls throughout each restaurant.  Servers do not wear uniforms but are dressed in street clothes and the Barrio furnishings are simple, unclothed tables and chairs.  On each dining table, customers find a table caddy that holds a roll of paper towels in lieu of napkins, a long, narrow pad of paper displaying a scantron-style menu and several pre-sharpened pencils.  The website for Barrio is barrio-tacos.com.  Whereas Condado's website is condadotacos.com. Each Barrio location has an oval sign above the entrance with the Day of the Dead skull and reading as follows:

barrio
tacos + tequila + whiskey

The menu at Barrio allows customers to build their own tacos.  The menu is divided into 7 sections: Tortillas; Protein; Cheese; Toppings; Salsa; Sauces; and Sides.[10]  In each section are relevant fresh taco ingredients for the customer to select.  To the right of each ingredient choice are circles that the customer can to fill in with the provided pencil if he/she wants that ingredient on a taco.  A customer can create up to two custom tacos on each menu form.  Alternatively, on separate Scranton-style menus, customers can select recommended combinations.

The custom tacos are then served street style as they are wrapped in foil and are served with tortilla chips in rectangular paper food trays and plastic baskets accompanied with a plastic disposal spork.  Guacamole, salsa, and queso, if ordered, are served in black, caldron-style, bowls with a basket

---

[10] The Sauces have increasing numbers of "pepper" symbols, in a manner that was copied by Condado. For example, the Barrio Secret Sauce has 3 peppers, with the next highest being the Carolina Reaper with 5 peppers.  Likewise, Condado Secret Sauce has 3 flames and then the Condado Dirty Sauce jumps to 5 flames.

of tortilla chips. And alcoholic beverages, such as craft brews and specialty margaritas, are served in mason jars.

By way of comparison, the minute a patron walks into a Condado Taco restaurant he/she is immersed in an atmosphere embarking on a dining experience that has *the very same* look and feel of Barrio.  Each Condado Taco location is decorated with a similar street-art mural featuring the "Day of the Dead" theme. Large street-art style painted murals adorn the walls of Condado. Patrons order from the very same preprinted menu used by Barrio, placed at every table together with pre-sharpened pencils and with many of the ingredients being identical to Barrio's. The custom created tacos are served in the same street style manner, wrapped in foil with a plastic disposable spork placed in every basket. Condado beverages are served in mason jars, a confusingly similar fashion as though the patron was at Barrio.  Further, in lieu of a napkin the patron has an available roll of brown paper towels on a table caddy, just like Barrio.  All staff are in street clothes to maintain the same look and feel of Barrio.

The Condado website further adds to the confusion with the URL being "Condadotacos.com," and above each Condado entrance is an oval sign configured with the "Day of the Dead" skull and reading as follows:

CONDADO
Tacos + Tequila + Margaritas

The following is a side-by-side comparison of the Barrio and Condado signage:

 

In *Fuddruckers,* the Ninth District stated that "we agree with Fuddruckers that a restaurant's décor, menu, layout and style of service may acquire the source-distinguishing aspects of protectable trade dress such that their imitation is likely to cause consumer confusion." *Id.* at 841.

The facts in this case check each of the same boxes as *Fuddruckers*: Condado's décor is the same as Barrio's; Condado's menu is the same as Barrio's, Condado's layout and style of service is the same as Barrio's. In summary, Barrio Bros. created an inherently distinctive trade dress which is protected under §43(a) of the Lanham Act which Condado has copied and is deploying in each of its locations.

In this case, Barrio Bros. does not believe the Defendants will dispute (i) that the trade dress at issue is inherently distinctive and thus protectable under the Lanham Act[11], or (ii) that the Condado trade dress is virtually identical to that of Barrio. To these points, Kahn has given numerous statements to the media in which he acknowledges that the trade dress at issue is in fact distinctive and the Condado trade dress is a virtual copy of Barrio. Thus, as Justice Scalia focused his Concurring Opinion in *Two Pesos* on customer confusion, likewise the touchstone of this case is whether there is a likelihood of customer confusion.

---

[11] Condado's press releases on its website clearly reflects that the Condado brand is unique, of course but for Barrio's brand from which it was copied.

Likelihood of confusion "exists when customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.* 826 F.2d 837, 1987 U.S. App. LEXIS 11293 846.  The factual elements that make up likelihood of confusion include the defendant's intent in adopting the trade dress, the similarity of the trade dress, similarity of goods and evidence of actual confusion. *Id.*

With respect to the Defendant's intent, the *Fuddruckers* Court recognized that deliberate copying may suffice to support an inference of secondary meaning, *to wit,* the trade dress at issue acquired distinctiveness through secondary meaning.  Thus, as applicable to this issue of likeliness of confusion, a finding that Defendants intentionally copied the Barrio trade dress, in and of itself, creates the inference that the Barrio trade dress is inherently distinctive and the Defendants intended to create customer confusion by attempting to associate Condado Tacos with Barrio.  This conclusion is support by Kahn's many media interviews in which he falsely claims to have created Barrio and compares Condado to Barrio.[12]  Thus, there can be no genuine dispute as to the intentional infringement of the trade dress.

Furthermore, there is an abundance of evidence of actual confusion. A well-accepted, tried and true method for proving actual confusion is customer surveys.  To this point, social media sites are a great value. For instance, relevant Yelp reviews of Condado Tacos include the following:

Daralyn B.
Lakewood, OH
11/9/2017

"Barrio in Cleveland=Condado in Columbus.  I love Barrio, so I was happy when I heard it was coming to Columbus.  I love the build your own taco concept.  Customization these days is everything!  If you don't live in the area, parking can be a nightmare, but that's downtown for ya.

Katherine N.
Gahanna, Columbus, OH
9/7/2017

---

[12] Kahn set the groundwork for maximizing his intended theft of Barrio's trade dress by requiring the RSA include a provision that allowed Kahn to indicate he was a co-founder of Barrio.

Was super stoked when I found out that Condados was adding a location at Easton.  It is a large location and they can get you seated right away.  As always, with Condado, great food, great prices, leaving full and happy! Great happy hour and a fun place for groups.  _Still my favorite taco place aside from Barrio (I think it's their sister restaurant?)_ in CLE.

T.J.H.
Aspiring Unicorn
Cleveland, OH

If you're from Cleveland and have been to Barrio- you know the drill.  Apparently the owner of Condado co-opened Barrio and you can definitely tell as soon as you walk in.

See, **Exhibit E.**

Moreover, shortly after the filing of this action, Cleveland.com posted a story headlined as "Taco Wars" (although more precisely "Taco Wars II" given the landmark United States Supreme Court decision in *Two Peso, Inc. v. Taco Cabana, Inc.*). Relevant Twitter comments to this article include the following:

Vince Chase @VinTheHater
"That's funny.  I was in Cleveland months ago and a friend brought me to Barrio.  In my head the entire time I'm going "This place is a blatent [sic] copy of Condado.  Ha"

Drew Simpson @dsimpson535
"@StevemilerBank so apparently they were not the same company this whole time."

Elizabeth Miller @llmiller12
"Going into a Condado in Columbus, I definitely thought it was some kind of Barrio spin-off. and someone told me the co-founder was from Barrio… so I did think they were related. Guess not… anymore."

See, **Exhibit F.**

Prior to commencing this action, Barrio Bros. was contacted by the publication Columbus CEO, which likewise commented on the similarities between Barrio and Condado as follows:

**From:** Dave Ghose <dghose@columbusceo.com>
**Date:** August 29, 2018 at 8:15:12 AM EDT
**To:** BarrioTacos@gmail.com
**Subject: Barrio and Condado Tacos**

Hello,

This message is for Sean Fairbairn. I hope I have the right email address.

I'm the editor for Columbus CEO, a monthly business publication in Columbus. We've been following the growth of the Columbus-based taco chain Condado Tacos in recent years, and as it has grown, one of the things I've wondered about is its similarity to Barrio in the Cleveland area. I don't know the whole story, but I understand Condado founder Joe Kahn has a connection to Barrio. I was hoping to talk to Sean about these similarities: Why are the chains so similar? How come Condado is allowed to so closely mimic the Barrio concept (I understand Barrio was first)?  How do the folks at Barrio feel about the similarities between Barrio and Condado (especially as Condado now has plans to grow in Cleveland)?

Please let me know if you have any questions.

Best wishes,

Dave

--
**Dave Ghose**
Editor
Columbus CEO
(614) 573-6590
@CEO_editor
columbusceo.com
Sign up for our email newsletter

*See,* **Exhibit G.**

The facts set forth herein, demonstrate that the Barrio trade dress is inherently distinctive and protectable under Section 43(a) of the Lanham Act.  Moreover, the undisputed evidence is that Defendant Joseph Kahn, the founder of Condado, purposefully and intentionally stole the Barrio trade dress in an attempt to associate Condado with Barrio and create customer confusion.  Consequently, the Plaintiffs have demonstrated that they are likely to prevail on the merits of their claims.

While they have not yet filed a responsive pleading in this matter, Defendants have implied the defense(s) of laches or waiver. Such defenses fail and do not detract from the strength of the Plaintiffs' claims.  The defenses of laches and waiver are equitable in nature and are barred by the willful and intentional conduct of an infringing party. In *Rothman v. Greyhound Corp.,* 175 F.2d 893, 895 (4th Cir. 1949), *citing Menendez v. Holt,* 128 U.S. 514, 523-524, the Fourth Circuit Court of Appeals stated that "mere delay in seeking relief is no bar to an injunction when the infringer has had knowledge of the fact that he is infringing and has deliberately set out to capitalize on the good will of the owner."  Likewise, given the public interest in the enforcement of the Lanham Act and

preventing customer confusion over origin and source, the Fourth Circuit has held that estoppel by laches may not be invoked to deny injunctive relief if it is apparent that the infringing use is likely to cause confusion.  *Sara Lee Corp. v. Kayser-Roth Corp.* 81 F.3d 455, 461 (4th Cir. 1996).

Moreover, the Plaintiffs' claims in this action are bolstered by the fact of the RSA entered in connection with the termination of the 2013 State Court Litigation, *to wit,* the RSA specifically preserves therein the Plaintiffs' rights to protect the Barrio trade dress by way of enforcement of the RSA.  The RSA expressly prohibits Kahn from utilizing the Barrio name and Barrio marks to designate or imply a source of his subsequent products or services.  It is well-settled that waiver constitutes the known relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right. *Cent. Benefits Mutual Ins. Co. v. Blue Cross & Blue Shield Ass'n,* 711 F.Supp. 1423, 1433 (S.D. Ohio 1989).  By memorializing in the RSA protections against Kahn infringing upon the Barrio trade dress, the defense of waiver and laches is meritless.

For these reasons, the Plaintiffs are likely to prevail on the merits of their claims and have satisfied the first prong of the requirements for injunctive relief.

C.    <u>**ABSENT THE REQUESTED INJUNCTIVE RELIEF THE PLAINTIFFS WILL SUFFER IRREPARABLE INJURY.**</u>

Irreparable injury is injury that is "not fully compensable or avoidable by the issuance of a final judgment (whether a damages judgment or a permanent injunction, or both) in the plaintiff's favor." *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc., et al.,* 735 F.3d 735, 740 (7th Cir. 2013).  "Irreparable injury encompasses different types of losses that are often difficult to quantify, including lost sales and erosion in reputation and brand distinction."  *Douglas Dynamics, LLC v. Buyers Prods. Co.,* 717 F.3d 1336, 1344 (Fed. Cir. 2013) (lost sales constitute irreparable injury). Courts have found that reputational damage caused by the presence of an infringer in the marketplace can constitute irreparable injury that justifies entry of a preliminary injunction. *Id.* at 1344-45 (damage to a patentee's reputation as an innovator can constitute irreparable injury).

In the present case, Barrio Bros. has demonstrated the likeliness of success in proving actual

customer confusion. Condado has already deprived Barrio Bros. of customers from nearby markets, and Defendants are now attempting to move Condado Tacos into the Cleveland, Ohio, market, the same market Barrio has developed since its inception in 2012.  Absent the requested injunctive relief, Condado will be permitted to continue to cause customer confusion and erode the goodwill and brand recognition built by Barrio.

D.    **THE PUBLIC INTEREST WILL BE SERVED BY THE ISSUANCE OF THE REQUESTED INJUNCTIVE RELIEF.**

Finally, the public interest will be served by the issuance of a Temporary Restraining Order and Preliminary Injunction.  The Lanham Act was intended to make "actionable the deceptive and misleading use of marks" and to "protect persons engaged in commerce against unfair competition." Protection of one's intellectual property promotes innovation and business development.  In underscoring the importance of intellectual property laws, it is said that U.S. commerce kneels at the altar of intellectual property.  Laws protecting one's intellectual property is the foundation of creativity, ingenuity, and innovation.  To these points, the protection of trade-dress serves the purpose to "secure to the owner of the mark the goodwill of his business and to protect that ability of consumers to distinguish amount competing producers."  As both Congress and the United States Supreme Court have recognized, National Protection of trademarks and trade dress is desirable because trademarks and trade dress foster competition and the maintenance of quality by securing to the producer the benefits of good reputation. *Id.*  The injunction relief requested herein serves the public interest by protecting those same driving principals of commerce and economics that Congress intended when enacting the Lanham Act.

IV.    **CONCLUSION.**

As demonstrated herein, Mr. Leneghan and Barrio Bros. created a particular combination and arrangement of design elements, which when taken together, form an inherently distinctive trade dress that distinguishes it from other restaurants.  This trade dress is a form of unregistered

trademark serving as a "representation or designation" of product source protectable under §43(a) of the Lanham Act to the same extent as a registered trademark.

In a deliberate attempt to create customer confusion and wrongfully associate Condado Tacos with Barrio, Defendant Kahn and those co-Defendants acting in concert with him, have intentionally stolen and are infringing on Barrio's trade dress in violation of the Lanham Act.

The Plaintiffs having satisfied the elements necessary for injunctive relief respectfully request that this Honorable Court issue a Temporary Restraining Order and Preliminary Injunction (and eventually a Permanent Injunction) that prohibits the Defendants their agents, servants, and employees, and those people in active concert or participation with them from continuing the use of the Barrio Bros. trade dress by enjoining them from opening any additional Condado Tacos restaurants based on or deploying the Barrio trade dress.

Respectfully submitted,

*/s/Samuel J. Lauricia III*
**SAMUEL J. LAURICIA III (0078158)**
**RANDY L. TAYLOR (0069529)**
**SCOTT J. ORILLE (0069192)**
Weston Hurd LLP
1301 East 9th Street, Suite 1900
Cleveland, Ohio 44114
Telephone:  (216) 241-6602
Facsimile:   (216) 621-8369
E-mail:  SLauriciA@westonhurd.com
          RTaylor@westonhurd.com
          SOrille@westonhurd.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The within pleading was filed via the Court's electronic filing system this **2nd** day of **November 2018**; service will be accomplished in accordance with instructions contained therein.

/s/Samuel J. Lauricia III
**SAMUEL J. LAURICIA III (0078158)**
**RANDY L. TAYLOR (0069529)**
**SCOTT J. ORILLE (0069192)**
*Counsel for Plaintiffs*