UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BARRIO BROS., LLC. ET AL., | ) | CASE NO.1:18CV2052 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| REVOLUCION, LLC, ET AL., | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction (ECF # 5) by Barrio Bros., LLC., Justin Hughes, LLC., Tres Amigos Lakewood, LLC., Thomas Leneghan and Sean Fairbairn ("Plaintiffs"). For the following reasons, the Court denies Plaintiffs' Motion.

Plaintiffs filed their Complaint for Injunctive Relief and Money Damages on September 7, 2018 and filed their Motion for TRO on November 2, 2018. On November 6, 2018, the Court held an attorneys only conference in chambers. The Court set a short briefing scheduled and stayed the filing of an Answer to allow Defendants the opportunity to focus on their Opposition Brief. Defendants' Opposition and Plaintiffs' Reply have been filed and the matter is ripe for ruling.

According to Plaintiffs' Complaint and Motion, Plaintiffs' have owned and operated a chain of build-your-own taco restaurants known as Barrio since 2012. Besides Barrio Tremont and Barrio Lakewood, there are four additional Barrio restaurants in Cleveland Heights, Willoughby and the Gateway District. Also, Barrio Bros. has an

ownership interest in a Barrio restaurant in Portsmouth, New Hampshire. Plaintiffs contend these restaurants have unique and inherently distinctive trade dress. Defendant Joseph Kahn was a 6% shareholder in Justin Hughes, LLC., owner of the Tremont Barrio, but was terminated from employment with Barrio in 2013. Pursuant to a settlement agreement in 2014, Kahn surrendered his equity position in Barrio. Pursuant to the terms of the settlement agreement, Kahn was permitted to open his own Mexican-themed restaurant utilizing a build-your-own concept. However, the settlement agreement prohibits Defendants' use of Plaintiffs' intellectual property and further prohibits Defendants from associating any new restaurant with Barrio or using Barrio's trademarks.

Despite these restrictions, Plaintiffs allege Defendants have opened a number of restaurants primarily in the Columbus, Ohio area, named Condado Tacos, beginning in 2014 that use Barrio-like themes and marks. Plaintiffs argue that Defendants have misappropriated Barrio's trade dress and trade secrets such that patrons will be confused as to any connection, association, sponsorship or affiliation between Condado Tacos and Barrio Bros. For example: Servers are informally dressed in street clothes. The furnishings are simple unclothed tabled and chairs. Each table has a table caddy with a roll of brown paper towels rather than napkins. The ingredients used are extraordinarily similar if not identical. The Condado restaurants are decorated with large murals featuring the Day of the Dead theme just like Barrio. Patrons order custom-made tacos from virtually identical menus placed on the table with pre-sharpened pencils. The tacos are served in a similar manner, foil-wrapped in a basket, including a plastic spork. The

signage above the door is nearly identical. Barrio advertises that its name implies that it is located in the heart of the "neighborhood," while Condado advertises it is in the heart of the "county."

In 2013, Kahn sued Leneghan in state court contending Kahn had developed the build-your-own taco concept. Leneghan disputed this and the litigation ultimately resolved via the aforementioned settlement agreement. After the agreement, Kahn and his business partners opened Condado Tacos in Columbus and have since expanded to Cincinnati, Pittsburgh, Indianapolis and now plans to open in the Cleveland area, specifically in Orange Village, Ohio at Pinecrest shopping center. It is the Cleveland restaurant that Plaintiffs seek to enjoin from opening. The parties have engaged in extensive negotiations, including Defendants' purchase of Barrio. Apparently, negotiations broke down and the Pinecrest Condado Taco is due to open on November 15, 2018. Plaintiffs filed their Motion for Temporary Restraining Order and Preliminary Injunction on November 2, 2018, seeking to enjoin Defendants from opening Pinecrest Condado.

According to Plaintiffs, Condado has misappropriated Barrio trade secrets and trade dress to such an extent that customers walking into a Condado are likely to be confused as to the connection and association between Condado and Barrio. Plaintiffs' claim the following: Condado utilizes a similar menu, its walls are adorned with painted murals featuring Day of the Dead themes. Its menu items are nearly identical to Barrio's and are served in foil with a spork just like Barrio. Kahn also markets each new Condado by proclaiming he was a co-founder of Barrio. Servers dress in street clothes and brown

paper towels are used instead of napkins.

Defendants contend Plaintiffs acknowledge that the settlement agreement permits Defendants to operate a Mexican-themed restaurant utilizing a "build your own" concept. Also, the settlement agreement includes a provision that allows Kahn to indicate he was a co-founder of Barrio. Leneghan acknowledged in a deposition that Kahn helped develop the Barrio concept. Defendants contend that much of what Barrio claims as trade dress has been taken from other existing restaurants. As an example, Defendants point out that the Barrio logo uses the same name "Barrio" and same font as an existing Barrio restaurant chain in Minnesota and the name "Barrio" is used by twelve other restaurants in the U.S. Defendants further contend that the Day of the Dead theme is prevalent throughout modern Mexican restaurants as demonstrated by photos submitted by Defendants of Day of the Dead murals in restaurants throughout Northeastern Ohio. Plaintiffs acknowledge that the build-your-own concept is a trending restaurant concept used by other restaurants, including Mexican restaurants in Northeastern Ohio. Furthermore, Defendants contend that Plaintiffs' other trade dress elements, including servers in street clothes, use of sporks, mason jars, paper towels and foil wrap are too commonplace to constitute an inherently distinctive design and are functional in nature.

Defendants also note that each Condado is different, with the first three Columbus Condado's using a black and white Day of the Dead theme. However, in March of 2017 Condado determined that the black and white Day of the Dead theme was overdone in Mexican restaurants and began using a different interior design decor, including bright colored cartoonish murals with wall paintings emblematic of the location and or region.

This colorful cartoonish mural theme is used in the Pinecrest location. Thus, there is no risk of confusion with Barrio. Likewise its signage is dissimilar to Barrio as it lacks the oval design and font similarities.

While Plaintiffs focus on the similarities between Barrio and the Columbus Condados, it is the similarities between Barrio and the Pinecrest Condado that the Court must limit its focus because Plaintiffs seek to enjoin the Pinecrest location from opening. Defendants contend there is no similarity in look or design. Apart from the stark interior design and signage differences, Defendants note that Barrio locations are placed in neighborhoods, while Condados are generally located in new construction or ground-up developments. Barrio points to customer reviews on social media posts to demonstrate that some have confused the two restaurants but these are limited to the Columbus area Condados and not Pinecrest.

Moreover, Defendants argue Plaintiffs' federal trademark claims are barred by the relevant statute of limitations. Barrio was aware of Condado's alleged misappropriation back in 2014 when it sent a cease and desist letter to Defendants. Thus, Defendants argue Plaintiffs are unlikely to succeed on the merits.

Finally, Defendants contend Plaintiffs cannot show irreparable harm because lost revenue is not irreparable harm. Defendants however, will suffer substantial harm if they are enjoined from opening as its employees would be unable to earn wages and Pinecrest would be obligated on its lease without earning revenue to cover it. Because the public interest is best served by open competition in the marketplace the public interest is best served by allowing the opening to occur.

5

## Standard of Review

Injunctive relief is an extraordinary remedy and is issued cautiously and sparingly.  *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-313 (1982).

Four factors must be considered when deciding whether to grant an injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the movant; (3) whether others will suffer substantial harm as a result of the injunction, should it issue; and (4) whether the public interest will be served by the injunction.  *See Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Prods.*, 134 F. 3d 749, 753 (6th Cir. 1998); *Vittitow v. Upper Arlington*, 43 F. 3d 1100, 1109 (6th Cir. 1995) (the four factors are "not prerequisites to be met, but factors to be balanced."); *D.B. v. Lafon*, 2007 U.S. App. LEXIS 3886 (6th Cir. 2007).  While no single factor will be determinative as to the appropriateness of the equitable relief sought, (*In re DeLorean Motor Co.*, 755 F. 2d 1223, 1229 (6th Cir. 1985)), " a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F. 3d 620, 625 (6th Cir. 2000).

The moving party must establish its case by clear and convincing evidence.  *See Deck v. City of Toledo*, 29 F. Supp. 2d 431, 433 (N.D. Ohio 1998), *citing Garlock, Inc., v. United Seal, Inc.*, 404 F. 2d 256, 257 (6th Cir. 1968).

The Court may issue a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.  (Fed. R. Civ. P. 65c).

**Trade Dress**

Plaintiffs seek to enjoin Defendants from opening the Pinecrest Condado and any other new Condado or similar restaurant until the suit is resolved. Plaintiffs' Motion for Temporary Restraining Order seeks such an injunction due to Defendants alleged ongoing infringement in violation of the Lanham Act at Section 43(a). "The Lanham Act, 15 U.S.C. §§ 1051–1141n, encompasses the protection not just of wordmarks and symbols, but also of trade dress." *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.,* 730 F.3d 494, 503 (6th Cir. 2013) citing *Wal–Mart Stores, Inc. v. Samara Bros.,* 529 U.S. 205, 209, 120 S.Ct. 1339, (2000). Section 43(a) of the Lanham Act creates a "federal cause of action for infringement of marks and trade dress that have not obtained federal registration." *Tumblebus Inc. v. Cranmer,* 399 F.3d 754, 760–61 (6th Cir.2005); 15 U.S.C. § 1125(a). "Trade dress is the total image of the product, including all of its identifying characteristics such as size, shape, package, and sales techniques, which make it distinguishable from other products in the market." *Happy's Pizza Franchise, LLC v. Papa's Pizza, Inc.,* No. 10 15174, 2013 WL 308728, at *3 (E.D. Mich. Jan. 25, 2013) *citing Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 764 n. 1, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

To succeed on a trade dress infringement claim under the Lanham Act, a plaintiff must prove: "1) that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dresses, 2) that the trade dress is primarily nonfunctional, and 3) that the trade dress of the competing good is confusingly similar." *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 629

(6th Cir.2002).

**<u>Distinctiveness</u>**

"Distinctiveness of trade dress may be inherent or demonstrated by secondary meaning." *Happy's Pizza,* 2013 WL 308728, at *3 *citing Abercrombie,* 280 F.3d. at 635. Trade dress is inherently distinctive when its "intrinsic nature serves to identify a particular source." *Id.* It acquires secondary meaning when, " 'in the minds of the public, the primary significance of a [trade dress] is to identify the source of the product rather than the product itself.' " *Id.* In *Abercrombie & Fitch*, the Sixth Circuit adopted the categories of distinctiveness created by the Second Circuit. Among these categories, those marks found to be "arbitrary ('Lucky Strike cigarettes'), fanciful ('Kodak' film), or suggestive ('Tide' laundry detergent")" are inherently distinctive. *Id.* (citing *Abercrombie & Fitch Co., v. Hunting World, Inc.,* 537 F.2d 4, 10–11 (2d Cir.1976). Those that are merely descriptive or generic are not inherently distinctive. *Id.* at 636.

Here, Plaintiffs allege a protectable trade dress in its combination and arrangement of design elements that "when taken together" are inherently distinctive. The "interior décor category fits awkwardly into the classifications of trade dress law, constituting either product packaging or a *'tertium quid'* akin to product packaging." *Best Cellars, Inc. v. Wine Made Simple, Inc.,* 320 F.Supp.2d 60, 70 (S.D.N.Y.2003), citing *Wal–Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 215, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). Both the *Best Cellars* and *Happy's Pizza* courts determined that the *Abercrombie* test applied to trade dress claims arising out of restaurant decor infringement.

8

Here, the Court finds a number of problems with the elements that Barrio claims comprise its distinctive mark. First, the name "Barrio" is not distinctive, as Defendants have demonstrated a dozen other restaurants use the name. The use of the Day of the Dead theme is also used in other Mexican restaurants as demonstrated by Defendants. In their Reply, Plaintiffs include a chart detailing alleged trade dress elements that both restaurants have in common. One of these is "no two stores have same graffiti, street art." (ECF # 13-2). This element weighs against Plaintiffs distinctiveness claim as it demonstrates there is no common interior mural art. This conclusion is supported by Defendants' evidence that Barrio uses black and white color schemes throughout its restaurants while the Pinecrest Condado's uses brightly colored, cartoonish murals featuring a giant sun, a crowned female on a throne and various creatures. While it does have various skulls on the glass doors and at least one mural of a skull with liquid in it, these are not confusingly similar to the skeletal caricatures common throughout Barrio.

Neither is the Barrio signage similar to the Pinecrest Condado's. Barrio presents the name written horizontally in a unique font in an oval circle while Pinecrest Condado's signage presents a its name in electronically illuminated, red or white block lettering.

Furthermore, a review of video of Barrio in Willoughby, Ohio and Pinecrest Condado finds additional design differences in that Barrio uses square, four-person green- topped tables with red and black chairs while Condado has long communal-style tables with backless brown stools. In short, the differences in the restaurant decor and style is stark and substantial such that there could be little likelihood of confusion based

on the appearance of each store.

**<u>Nonfunctional</u>**

Most of the remaining elements claimed by Barrio represent functional design elements, including: foil wrapped food, sporks, mason jars for serving drinks, paper towels instead of napkins, non-uniformed staff, table caddies and scantron order forms. These elements are not unique to Barrio as demonstrated by Defendants and furthermore, cannot provide the basis for distinctiveness under the Lanham Act. See *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769, 112 S. Ct. 2753, 2758, 120 L. Ed. 2d 615 (1992). ("It is also clear that eligibility for protection under § 43(a) depends on nonfunctionality.").

Defendants further offer evidence that other establishments, including other Mexican restaurants, use scantron selection menus. Thus, the use of such menus is not unique to Barrio. While Barrio contends the menu offerings are nearly identical, the choice of meats, sauces, salsas and cheeses are most certainly not unique to Barrio but are commonplace in Mexican restaurants.

Plaintiffs have the burden of demonstrating a substantial likelihood of success on the merits by clear and convincing evidence. Because Defendants have demonstrated with competent evidence that Plaintiffs' trade dress fails to demonstrate a distinctive, protectable trade dress, Plaintiff has failed to meet its burden. Based on the evidence before the Court, Plaintiffs alleged distinctive design elements are either non-distinctive, functional or are not confusingly similar to those of Condado's Pinecrest restaurant.

In *Happy's Pizza Franchise, LLC v. Papa's Pizza, Inc.,* No. 10 15174, 2013 WL

308728, at *4 (E.D. Mich. Jan. 25, 2013), the court, on summary judgment, was presented with a trade dress claim similar to the one before this Court. Happy's restaurant alleged it had a trade dress claim based on its unique interior and exterior decor and that a competitor, Papa's Pizza, Inc. infringed Happy's trade dress. The court denied Happy's motion for partial summary judgment holding, "Happy's failed to provide evidence that each Happy's restaurant uses this specific uniform theme, that other fast food restaurants do not use these elements, that customers exclusively associate these elements and menu items with Happy's, that other restaurants do not offer similar food combinations, and that all of Papa's restaurants use these elements."

Furthermore, in *Best Cellars, Inc. v. Wine Made Simple, Inc.,* 320 F. Supp. 2d 60, 72 (S.D.N.Y. 2003), the Court looked to the trade dress as a whole, not its individual elements holding, "the trade dress is the overall look of the store, consisting of a cumulation of interacting elements, and defendants do not infringe by appropriating the marketing concept, or any particular element of plaintiff's design, unless the overall dress is sufficiently similar to generate likely consumer confusion." Thus, where a competitor's decor may copy some elements of another's, this alone will not constitute trade dress infringement when the trade dress owner's alleged trade dress lies in the interaction of several elements that combined create a distinctive trade dress.

Plaintiffs have failed to demonstrate a likelihood of success on their Lanham Act claim. "The failure to show any likelihood of success on the merits—let alone a strong or substantial likelihood of success—is enough, by itself, to warrant denial of preliminary injunctive relief." *Essroc Cement Corp. v. CPRIN, Inc.,* 593 F. Supp. 2d 962, 969 (W.D.

11

Mich. 2008) *citing Abney v. Amgen, Inc.,* 443 F.3d 540, 547 (6th Cir.2006) ("a finding of no likelihood of success 'is usually fatal' "). Because Plaintiffs have failed to demonstrate by clear and convincing evidence a substantial likelihood of success on the merits, the Court denies Plaintiffs' Motion.

    IT IS SO ORDERED.

                                                    s/ Christopher A. Boyko
                                                   CHRISTOPHER A. BOYKO
                                                   United States District Judge

Dated: November 14, 2018