**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **BARRIO BROS., LLC, et al.,** | **CASE NO. 1:18-CV-02052** |
| **Plaintiffs,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **REVOLUCION, LLC, et al.,** | |
| **Defendants.** | **MEMORANDUM OF OPINION AND ORDER** |

This matter comes before the Court upon the Motion for Partial Judgment on the Pleadings of Defendants Revolucion, LLC, Revolucion Holdings, Inc., Cassyck, LLC, Joseph Kahn, Condado Tacos 1, 2, 4, 5, 6, 7, 8, LLCs, Jonathan D. Adams, and Thomas J. DeSantis (collectively, "Defendants"). (Doc. No. 19.) Plaintiffs Barrio Bros., LLC, Justin Hughes, LLC, Tres Amigos Lakewood, LLC, Thomas Leneghan, and Sean Fairbairn (collectively, "Plaintiffs") filed a brief in opposition to Defendants' motion on February 22, 2019, to which Defendants replied on March 8, 2019. (Doc. Nos. 25, 26.)

Also, currently pending is Plaintiffs' Motion for Leave to File a Second Amended Complaint. (Doc. No. 45.) Defendants filed a brief in opposition to Plaintiffs' motion on September 20, 2019, to which Plaintiffs replied on September 27, 2019. (Doc. Nos. 47, 49.) In addition, Plaintiffs have filed a Motion to Compel Discovery (Doc. No. 46), which Defendants have opposed (Doc. No. 48).

For the following reasons, Defendants' Motion for Partial Judgment on the Pleadings (Doc. No. 19) is GRANTED IN PART and DENIED IN PART. Plaintiffs' Motions for Leave to File a Second Amended Complaint and to Compel Discovery (Doc. Nos. 45, 46) are GRANTED.

I. **Background**

   a. **Factual Background**

Plaintiffs have owned and operated a chain of build-your-own taco restaurants known as Barrio since 2012. The original Barrio restaurant opened in Tremont, Ohio and is owned by Justin Hughes, LLC. (Doc. No. 16 at ¶ 25.) Prior to the opening of the original Tremont Barrio, Mr. Kahn accepted an offer from Mr. Leneghan to participate in the management of Barrio and to buy into Justin Hughes, LLC. (*Id.* at ¶¶ 23-25.)

Barrio became popular in the Cleveland market, and Plaintiffs, through various limited liability companies, opened additional Barrio locations in Lakewood, Cleveland Heights, Willoughby, and the Gateway District of Cleveland, Ohio. (*Id.* at ¶¶ 31-32.) Barrio Bros., LLC also has an ownership interest in a Barrio located in Portsmouth, New Hampshire. (*Id.* at ¶ 32.)

Generally, each Barrio restaurant features a Mexican "Day of the Dead" theme in which the interior walls of the restaurant are covered in a street artist styled décor. (*Id.* at ¶ 27.) Barrio servers dress in street clothes, and the furnishings are simple—generally unclothed tables and chairs. (*Id.*) In addition, on each table, there is a table caddy that holds a roll of paper towels in lieu of napkins, a long, thin pad of paper displaying a scantron-style menu, and several pre-sharpened pencils. (*Id.* at ¶ 28.) The menu is divided into seven sections and allows customers to build their own tacos. (*Id.* at ¶ 29.) Tacos come served wrapped in foil with tortilla chips in rectangular paper food trays and plastic baskets accompanied with a spork. (*Id.* at ¶ 30.) Guacamole, salsa, and queso are served in black, caldron-style, bowls with a basket of tortilla chips. (*Id.*) Alcoholic beverages, such as craft beers and specialty margaritas, are served in mason jars. (*Id.*)

In 2013, a dispute arose between Mr. Leneghan and Mr. Kahn, and Mr. Kahn was terminated from his position as manager of the Tremont Barrio. (*Id.* at ¶¶ 7, 36.) After engaging in litigation, the parties resolved their dispute via a Mutual Release & Settlement Agreement ("RSA") on August 11, 2014. (*Id.* at ¶¶ 37, 80.) The RSA divested Mr. Kahn and Cassyck, LLC—which is owned by Mr. Kahn and his wife—of any ownership in Barrio, prohibited them from utilizing the Barrio name, trademarks, service marks, and logos, and prohibited them from using, disclosing, or disseminating Barrio's trade secrets. (*Id.* at ¶¶ 6, 37-41.)

A few months after the execution of the RSA, Mr. Kahn and his new business partners, Mr. Adams and Mr. DeSantis, opened a Mexican restaurant called Condado Tacos in Columbus, Ohio. (*Id.* at ¶¶ 38, 56.) Defendants have since opened additional locations and now operate seven Condado Tacos restaurants throughout Ohio, Pennsylvania, and Indiana. (*Id.* at ¶ 57.) Despite the restrictions in the RSA, Plaintiffs allege that Defendants have misappropriated Barrio's trade secrets and trade dress through the operation of Condado Tacos. (*Id.* at ¶ 43.) In particular, Plaintiffs allege that each Condado Tacos location is made to mimic Barrio in nearly every respect, including the "Day of the Dead" theme, the street art restaurant décor, the preprinted checklist menu placed at every table together with pre-sharpened pencils, the use of paper towels instead of napkins, the taco ingredients, the dress of the staff, and the way in which tacos and drinks are served. (*Id.* at ¶¶ 50-51.)

### b. Procedural History

On September 7, 2018, Plaintiffs filed suit against Defendants in this Court. (Doc. No. 1.) Plaintiffs' original Complaint contained nine counts, specifically misappropriation of trade secrets under federal and state law, trade dress infringement and unfair competition under federal law, unfair competition and deceptive trade practices under state law, breach of contract, unjust enrichment, and

3

tortious interference. (*Id.*) Plaintiffs also moved for a temporary restraining order and preliminary injunction to enjoin Defendants from opening additional Condado Tacos restaurants. (Doc. No. 5.) On November 14, 2018, the prior judge assigned to this case denied Plaintiffs' motion, finding that they had failed to demonstrate by clear and convincing evidence a substantial likelihood of success on the merits. (Doc. No. 14.) Shortly thereafter, Plaintiffs filed their First Amended Complaint, which added a claim for copyright infringement. (Doc. No. 16.)

After answering the First Amended Complaint, Defendants moved for Partial Judgment on the Pleadings pursuant to Rule 12(c), seeking to dismiss three of Plaintiffs' claims as time-barred. (Doc. No. 19.) Plaintiffs then filed a Motion for Leave to File a Second Amended Complaint in order to add a claim for fraud and conspiracy to commit fraud and a Motion to Compel Discovery. (Doc. Nos. 45, 46.) All three motions are fully briefed and ripe for review.

**II.     Defendants' Motion for Partial Judgment on the Pleadings**

In their Motion for Partial Judgment on the Pleadings, Defendants assert that certain of Plaintiffs' claims are time-barred by either the applicable statute of limitations or laches. Specifically, Defendants seek the dismissal of Count 1 (misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836), Count 2 (trade dress infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125), and Count 5 (unfair competition and deceptive trade practices under the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02).

   **a. Standard of Review**

A court's review of a motion for judgment on the pleadings pursuant to Rule 12(c) is conducted in the same manner as its review of a motion to dismiss pursuant to Rule 12(b)(6). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). As such, courts must "view the complaint

4

in the light most favorable to the plaintiff, accepting as true 'all plausible well-pled factual allegations,' and drawing 'all reasonable inferences' in favor of the plaintiff." *Kinney v. Anderson Lumber Co., Inc.*, No. 18-5146, 2018 WL 7317203, at *4 (6th Cir. Sept. 13, 2018) (quoting *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013)).

Generally, a motion for judgment on the pleadings is "an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, dismissal is appropriate when "the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* "Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run." *Campbell v. Grand Trunk Western R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). But, "[i]f the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Id.*

### b. Count 1

Defendants assert that Plaintiffs' federal misappropriation of trade secrets claim—which is subject to a three-year statute of limitations—is barred because Defendants opened their first Condado Tacos restaurant in November 2014 and Plaintiffs failed to bring this suit until almost four years later in September 2018. Plaintiffs respond by arguing that this claim actually arises from the RSA, which means it is subject to the eight-year statute of limitations for breach of contract claims under Ohio law. The Court finds Plaintiffs' argument unpersuasive and thus holds that their federal misappropriation of trade secrets claim is barred by the statute of limitations.

Pursuant to the DTSA, a civil action for misappropriation of a trade secret "may not be commenced later than 3 years after the date on which the misappropriation with respect to which the

5

action would relate is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). In addition, "a continuing misappropriation constitutes a single claim of misappropriation." *Id.*

The statute of limitations delineated in the DTSA has been interpreted in the same manner as state versions of the Uniform Trade Secrets Act ("UTSA") that contain similar or identical language. *See CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560, 564-66 (8th Cir. 2019); *B&P Littleford, LLC v. Prescott Mach., LLC*, No. 18-11425, 2019 WL 4746743, at *9-10 (E.D. Mich. Sept. 30, 2019). Accordingly, the decisive inquiry in determining when the statute of limitations begins to run is when the plaintiff knew or should have reasonably known that the defendant was using trade secret information in an unauthorized fashion. *Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, 933 F. Supp. 2d 974, 1016 (S.D. Ohio 2013) (applying Ohio's UTSA, which provides that "[a]n action for misappropriation shall be commenced within four years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered") (quoting Ohio Rev. Code § 1333.66). "In determining whether a party should have discovered wrongful conduct, the relevant inquiry is whether the facts known 'would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry[.]'" *Id.* (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 181 (1984)). "If the party has such knowledge and fails to make an inquiry, he is chargeable with knowledge which by ordinary diligence he would have acquired." *Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 786 (N.D. Ohio 2005) (quoting *Hambleton*, 12 Ohio St.3d at 181).

In this case, Defendants argue that Plaintiffs' First Amended Complaint affirmatively demonstrates that Plaintiffs reasonably should have discovered the alleged misuse of their trade

secrets shortly after the first Condado Tacos opened. The First Amended Complaint provides that the first Condado Tacos opened within a couple of months following the execution of the RSA in August 2014. (Doc. No. 16 at ¶ 56.) Once Condado Tacos began operating, Plaintiffs allege the similarities between the restaurants were immediately apparent:

> Condado's is a Mexican restaurant utilizing Barrio's trade secrets and trade dress, *to wit*, each Condado's location is designed around the same "Day of the Dead" theme utilized by Barrio, uses the same street art restaurant décor utilized by Barrio, and is made to mimic Barrio's in nearly every respect.
>
> The minute a patron walks into a Condado, the patron is immersed in an atmosphere and embarking on a dining experience that has the look and feel of Barrio.

(*Id.* at ¶¶ 50-51.) In addition, the opening of Condado Tacos in Columbus was public knowledge, and the restaurant has been in the news and social media blogs/platforms. (*Id.* at ¶ 45.) Finally, the proximity and connection between Columbus and Cleveland, as alleged in the First Amended Complaint, provides additional support that Plaintiffs were or should have been aware of Defendants' alleged misappropriations. (*Id.* at ¶ 56 ("By opening the first Condado's in Columbus, a city inhabited by a large population of people from the Cleveland area, especially students attending Ohio State University, Condado's capitalized on Barrio's established brand through misappropriation of the latter's trade secrets and trade dress.").)[1] Based on all of this, Defendants assert Plaintiffs should

---

[1] Defendants also attempt to rely on Exhibits F and G to their opposition to Plaintiffs' Motion for a Temporary Restraining Order and ask the Court to take judicial notice of the exhibits. Exhibits F and G are communications from Mr. Leneghan and his attorney that Defendants contend conclusively establish Plaintiffs' knowledge of Condado Tacos' operations in late 2014 and early 2015. However, a court typically cannot take judicial notice of these types of documents. *See, e.g.*, *Jones v. Michican Dep't of Civil Rights*, No. 2:18-CV-11934, 2018 WL 4385666, at *6 (E.D. Mich. Sept. 14, 2018) ("The various medical records and email communications Plaintiff attaches to his 'motions' . . . are not proper for judicial notice."). Nor do they fall into any of the other categories of documents that courts may consider at the pleading stage. *See, e.g.*, *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) ("[A] court may consider 'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment.") (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). Consequently, the Court will not consider these documents in ruling on Defendants' motion.

have discovered any alleged misappropriation of their trade secrets shortly after the opening of the first Condado Tacos, yet failed to commence this action until almost four years later in September 2018, well after the three-year statute of limitations had passed. Plaintiffs do not advance any argument in response and appear to concede the issue.

Instead, Plaintiffs contend that their trade secrets claim arises from the RSA—not the DTSA—because the RSA specifically protects Barrio's trade secrets. As such, Plaintiffs assert their claim should be governed by Ohio's eight-year statute of limitations for claims based upon "an agreement, contract, or promise in writing." Ohio Rev. Code § 2305.06. However, none of the cases that Plaintiffs cite stand for the proposition that claims made pursuant to a specific statute are subject to the statute of limitations for a breach of contract claim simply because a contract between the parties may protect similar rights. Count 1 of Plaintiffs' First Amended Complaint specifically relies on the DTSA without any reference to the RSA. As a result, Plaintiffs' statutory claim for misappropriation of trade secrets is subject to the three-year statute of limitations prescribed by the DTSA—not Ohio's eight-year statute of limitations for breach of contract claims. Accordingly, the Court concludes that Plaintiffs failed to timely bring Count 1 of their First Amended Complaint.

### c. Counts 2 and 5

Next, Defendants argue that Plaintiffs' claims for trade dress infringement and unfair competition under the Lanham Act and Ohio Deceptive Trade Practices Act are barred by laches. In response, Plaintiffs again assert that their claims are subject to Ohio's eight-year statute of limitations for breach of contract claims. For the same reasons discussed above, the Court rejects that argument. Counts 2 and 5 are clearly statutory claims, not claims for breach of contract. However, Plaintiffs also argue that laches is inapplicable based on an exception for intentional and willful infringement

8

and the progressive encroachment doctrine. The Court agrees with Plaintiffs that, at this stage, they have adequately alleged that Defendants' conduct was willful and intentional, and Defendants therefore cannot rely on the equitable defense of laches.

With respect to "Lanham Act and Deceptive Trade Practices Act claims, because there are no specific statutes of limitations, courts apply the equitable doctrine of laches." *Prakash v. Altadis U.S.A. Inc.*, No. 5:10CV0033, 2012 WL 1109918, at *20 (N.D. Ohio Mar. 30, 2012).[2] "Ordinarily, a party asserting laches must show '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it.'" *Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, 796 F.3d 576, 584 (6th Cir. 2015) (quoting *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002)). In the Lanham Act context, however, if the plaintiff files its claim "within the time that it would have been required to file in the forum state a state-law claim for injury to personal property, then the plaintiff's delay in asserting its rights is presumptively reasonable." *Id.* However, "a delay beyond the analogous limitations period 'is presumptively prejudicial and unreasonable.'" *Id.* at 584-85 (quoting *Nartron*, 305 F.3d at 408.) The analogous limitations period in Ohio is the two-year statute of limitations provided for in Ohio Revised Code § 2305.10(A). *Id.* at 585. In addition, this period begins to run "when the plaintiff has 'actual or constructive knowledge of the alleged infringing activity.'" *Id.* at 584 (quoting *Nartron*, 305 F.3d at 408).

Here, for essentially the same reasons discussed above, Defendants contend that Plaintiffs had actual or constructive knowledge of Defendants' alleged trade dress infringement shortly after the

---

[2] "Ohio Courts look to the Lanham Act when interpreting the Ohio Deceptive Trade Practices Act." *Collins v. Marva Collins Preparatory Sch.*, No. 1:05cv614, 2007 WL 1989828, at *3 n.3 (S.D. Ohio July 9, 2007). As a result, "the Ohio Deceptive Trade Practices Act claim will not be separately analyzed." *Id.*

first Condado Tacos opened. Thus, Plaintiffs' claims fall outside of the analogous two-year statute of limitations period and presumptively should be barred. Again, Plaintiffs do not dispute this point.

However, "[l]aches is an equitable defense and . . . it can certainly be raised only by one who comes into equity with clean hands." *Am. Air Filter Co., Inc. v. Universal Air Products, L.L.C.*, No. 3:14–CV–665–TBR, 2015 WL 1541937, at *4 (W.D. Ky. Apr. 7, 2015) (quoting *United States v. Weintraub*, 613 F.2d 612, 619 (6th Cir. 1979)). Accordingly, "a person who deliberately infringes upon another person's intellectual property has unclean hands and may not claim the equitable defense of laches." *Id.* For example, the Sixth Circuit has held that laches was not available to a defendant if its patent infringement "was the result of deliberate, calculated plagiarism." *TWM Mfg. Co., Inc. v. Dura Corp.*, 592 F.2d 346, 349 (6th Cir. 1979). In addition, numerous district courts in the Sixth Circuit have held that the defendant's intentional infringement precluded the defendant from relying on a laches defense. *Am. Air Filter*, 2015 WL 1541937, at *4 ("[V]iewing the facts in the light most favorable to American Filter, Universal Air was aware of the rights of American Filter and acted egregiously by purposefully infringing upon those rights. Arguably, Universal Air has unclean hands and may not raise the equitable defense of laches."); *Days Inn Worldwide, Inc. v. Adrian Motel Co., LLC*, No. 07–13523, 2009 WL 3199882, at *13 (E.D. Mich. Sept. 30, 2009) (rejecting laches defense when defendants "intentionally and willfully infringed on the Days Inn Marks for four years"); *Big Ten Conference v. Big Ten Worldwide Concert & Sport Club at Town Ctr.*, No. 96-CV-70617-DT, 2000 U.S. Dist. LEXIS 22328, at *45-49 (E.D. Mich. Oct. 10, 2000) (holding defendant could not raise laches defense because "there was no good faith ignorance by Defendant in using the mark and . . . Defendant purposefully used the name 'Big Ten'").

Defendants assert that the Sixth Circuit has not recognized the willful infringement exception to laches because the Sixth Circuit enforced the defense of laches in a willful trade dress infringement case in *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298 (6th Cir. 2001). However, in *Herman Miller*, the Sixth Circuit did not address whether willful infringement precludes a defendant from raising a laches defense, as the issue does not appear to have been raised by the parties. *Id.* at 320-22. Indeed, the court did not even discuss whether the infringement was intentional or willful when analyzing the defendant's laches defense. *Id.* Moreover, it is not clear the court ever found the defendant's infringement was in fact intentional, as the defendant had repeatedly indicated prior to litigation that it thought it was making fair use of the intellectual property at issue and that its actions were legal. *Id.* at 305. Consequently, *Herman Miller* does not support the Defendants' argument.

Accepting Plaintiffs' well-pled factual allegations as true and drawing all reasonable inferences in their favor, the Court finds that they have adequately pled that Defendants' trade dress infringement was intentional. According to the First Amended Complaint, Mr. Kahn was obviously aware of the intimate details of Barrio restaurants based on his involvement in managing the Tremont Barrio, Mr. Kahn worked with Mr. Adams and Mr. DeSantis to open the first Condado Tacos only a few months after entering into the RSA, and Condado Tacos mimics Barrio in nearly every respect. All of this supports Plaintiffs' allegation that "[t]he acts of Defendants were intentional, willful, with bad faith, and were committed with the intention of deceiving and misleading the public and causing harm to Plaintiffs and made with the full knowledge of Plaintiff's intellectual property rights." (Doc. No. 16 at ¶ 74.) Thus, Plaintiffs have adequately alleged that Defendants have unclean hands, which prevents them from raising the equitable defense of laches at this stage of the litigation. Accordingly,

11

the Defendants' Motion for Partial Judgment on the Pleadings with regard to Counts 2 and 5 is denied, and the Court need not assess Plaintiffs' argument regarding the progressive encroachment doctrine.

### III. Plaintiffs' Motion for Leave to File a Second Amended Complaint

Plaintiffs have moved for Leave to File a Second Amended Complaint in order to add a claim for fraud and conspiracy to commit fraud based on evidence newly acquired during discovery. Defendants argue that leave should be denied because Plaintiffs' proposed amendment is made in bad faith, is unduly delayed, and is futile. The Court finds that none of Defendants' arguments warrant a denial of Plaintiffs' motion.

Pursuant to Rule 15(a)(2), a court "should freely give leave [to amend] when justice so requires." "Though the decision to grant leave to amend is committed to the trial court's discretion, that discretion is limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987). However, "[a] motion for leave to amend the complaint may be denied when the motion is the product of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014).

Defendants first argue that Plaintiffs' motion should be denied because it is made in bad faith. Defendants' main contention is that email correspondence between the parties related to the negotiations leading up to the RSA that has recently come to light negates many of Plaintiffs' claims. As such, Defendants assert that Plaintiffs' proposed amended complaint continues to include certain unsupportable allegations and the amendment is being made to "divert attention away from their

12

improper motives and bad faith allegations." (Doc. No. 47 at 4.) In response, Plaintiffs dispute the admissibility of the email correspondence and whether it actually negates any of their claims under the RSA or federal and state law. Plaintiffs and Defendants clearly disagree regarding the significance and effect of the newly discovered email correspondence, but neither party submitted the emails at issue to the Court. As such, the Court cannot conclusively find that Plaintiffs' proposed amendment is being made in bad faith.

Next, Defendants contend that Plaintiffs' amendment is unduly delayed because the newly discovered evidence that Plaintiffs rely on to support the timeliness of their amendment does not contain any new information. Plaintiffs respond that the newly produced emails contain evidence that was not previously available regarding Defendants' intent—prior to the signing of the RSA—to copy Barrio and to misappropriate Barrio's confidential information. It appears that the emails relied on by Plaintiffs do present at least some new information in support of their allegations, especially with regard to the alleged misappropriation of Barrio's financial information. (*See* Doc. No. 50.) Regardless, "[d]elay alone . . . does not justify the denial of leave to amend. Rather, the party opposing a motion to amend must make some significant showing of prejudice to prevail." *Security Ins. Co. of Hartford v. Kevin Tucker & Associates, Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995). As a result, the Court will not deny leave to amend based solely on Plaintiffs' potential delay in bringing their fraud claim.

Finally, Defendants argue that Plaintiffs' amendment would be futile because their new fraud claim is not alleged with sufficient particularity and could not survive a Rule 12(b)(6) motion to dismiss. "[W]here a proposed amendment would not survive a motion to dismiss, the court need not permit the amendment." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d

13

376, 383 (6th Cir. 1993). As noted above, when assessing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

In addition, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." To satisfy this particularity requirement, "a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005) (citations and internal quotations omitted).

In Ohio, "the elements of fraud are (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *Aetna Cas. and Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 540 (6th Cir. 2000).

The Court finds that Plaintiffs' allegations are sufficiently particular to state a claim of fraud. First, Plaintiffs have alleged the content of the purported misrepresentations on which they relied. In their proposed amendment, Plaintiffs claim that Mr. Kahn and Cassyck, LLC falsely represented in the RSA that they would not steal or utilize Barrio's trade secrets or other protected assets. In support of this assertion, Plaintiffs allege that, prior to executing the RSA, "while Defendant Kahn was still a member of Justin Hughes and Tres Amigos he had already begun his process of stealing the valuable Barrio Protected Assets- the same protected assets the Defendant is prohibited from utilizing by the terms of the RSA." (Doc. No. 45-1 at ¶ 160.) Specifically, Plaintiffs allege that email correspondence between Mr. Kahn and Mr. DeSantis indicates that Mr. Kahn "had stolen Barrio financial records and had disclosed copies to DeSantis to solicit DeSantis and Adams to join him in forming this knock-off Barrio restaurant." (*Id.* at ¶ 154.) In addition, the proposed amended complaint provides that "Defendants knew their conduct was wrong and detrimental to the Plaintiffs as evidenced by Desantis' email to Kahn dated April 5, 2014 stating **'get your best deal and take your time. We'll deal with the aftermath when your in the clear.'**" (*Id.* at ¶ 158.) Thus, Plaintiffs have plausibly alleged that Mr. Kahn and Cassyck, LLC knew their representations regarding Barrio's protected assets were false at the time they executed the RSA.

Plaintiffs have also sufficiently alleged the time and place of the misrepresentations, as they allege that they relied on Defendants' misrepresentations in the RSA, which was executed on August 11, 2014. *See GMAC Real Estate LLC. v. Prindle Real Estate, Inc.*, No. 2:07-CV-1017, 2007 WL 4570578, at *2 (S.D. Ohio Dec. 24, 2007) (holding allegations that misrepresentations occurred in specific documents satisfied the "where" requirement of Rule 9(b)). Therefore, the Court concludes

15

that Plaintiffs' proposed amendment is not futile and grants Plaintiffs' Motion for Leave to File a Second Amended Complaint.

## IV. Plaintiffs' Motion to Compel

Finally, Plaintiffs have also filed a Motion to Compel Discovery based on Defendants' refusal to engage in any additional discovery until certain issues are resolved. Defendants assert they should not be forced to continue with discovery because new evidence has come to light that negates many of Plaintiffs' claims, Plaintiffs' lawyer is a percipient witness and should be disqualified (although Defendants have not filed a motion to disqualify), and Plaintiffs' Motion for Leave to File a Second Amended Complaint has not been ruled on, so Defendants are unsure of what claims are pending against them. Defendants cite no law in support of their position, and none of these issues entitle Defendants to unilaterally decide to cease participating in discovery. In addition, all pending motions have now been resolved. Therefore, Plaintiffs' Motion to Compel Discovery is granted.

## V. Conclusion

For the reasons set forth above, Defendants' Motion for Partial Judgment on the Pleadings (Doc. No. 19) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Count 1 and DENIED as to Counts 2 and 5. As a result, Count 1 is DISMISSED WITH PREJUDICE. Plaintiffs' Motion for Leave to File a Second Amended Complaint (Doc. No. 45) is GRANTED, with the qualification that Count 1 has been dismissed. Finally, Plaintiffs' Motion to Compel Discovery (Doc. No. 46) is GRANTED.

**IT IS SO ORDERED.**

Date: October 16, 2019

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE