**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **BARRIO BROS., LLC, et al.,** | **CASE NO. 1:18-CV-02052** |
| **Plaintiffs,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **REVOLUCION, LLC, et al.,** | |
| **Defendants.** | **MEMORANDUM OF OPINION AND ORDER** |

This matter comes before the Court upon the Motion to Dismiss Defendants' Counterclaims ("Motion to Dismiss") of Plaintiffs Barrio Bros., LLC, Justin Hughes, LLC, Tres Amigos Lakewood, LLC, Thomas Leneghan, and Sean Fairbairn (collectively, "Plaintiffs"). (Doc. No. 61.) Defendants Revolucion, LLC, Revolucion Holdings, Inc., Cassyck, LLC, Joseph Kahn, Condado Tacos 1, 2, 4, 5, 6, 7, 8, LLCs, Jonathan D. Adams, and Thomas J. DeSantis (collectively, "Defendants") filed a brief in opposition to Plaintiffs' Motion to Dismiss on January 13, 2020, to which Plaintiffs did not reply. (Doc. No. 64.) For the following reasons, Plaintiffs' Motion to Dismiss (Doc. No. 61) is GRANTED IN PART and DENIED IN PART.

**I.  Background**

In 2012, Joseph Kahn ("Kahn") and Thomas Leneghan ("Leneghan") opened a build-your-own taco restaurant with a Day of the Dead theme called Barrio in the Tremont neighborhood of

Cleveland, Ohio. (Doc. No. 58, Defendants' Counterclaim Against Plaintiffs, at ¶¶ 2-3.)[1] Both Kahn and Leneghan had an ownership interest in the Barrio venture. (*Id.* at ¶ 2.)

In 2013, Kahn initiated litigation in Ohio state court after an employee dispute arose between Kahn and Leneghan. (*Id.* at ¶¶ 6-7.) On August 11, 2014, Kahn and Leneghan, as well as several other individuals and entities involved in the litigation, settled their dispute by entering into a Mutual Release & Settlement Agreement ("RSA"). (*Id.* at ¶ 7; Doc. No. 58-2.) The RSA was the product of extensive negotiations, during which Plaintiffs were aware that Kahn was simultaneously negotiating with potential investors and partners for the express purpose of opening his own Mexican themed taco restaurant using the Barrio concept. (Doc. No. 58, Defendants' Counterclaim Against Plaintiffs, at ¶¶ 8-9.) Ultimately, in exchange for compensation, the RSA (1) divested Mr. Kahn and Cassyck, LLC—which is owned by Mr. Kahn and his wife—of any ownership in Barrio; (2) prohibited them from utilizing Barrio's name, trademarks, service marks, and logos, including the phrase "in the heart of"; (3) prohibited them from disclosing or disseminating Barrio's trade secrets; and (4) prohibited them from owning or operating a Mexican-themed restaurant within two miles of any Barrio location for two years. (Doc. No. 58-2 at 2-5.)

After entering into the RSA, between late 2014 and 2018, Kahn and the other Defendants opened several Mexican restaurant locations called Condado in Columbus, Pittsburgh, Cincinnati, and Indianapolis. (Doc. No. 58, Defendants' Counterclaim Against Plaintiffs, at ¶ 23.) Condado was based on the same build-your-own taco concept and Day of the Dead theme as Barrio. (*Id.* at ¶ 18.) Defendants then publicly announced that Condado would be opening its first northeast Ohio location

---

[1] The allegations contained in Defendants' Answer and Counterclaim (Doc. No. 58) are assumed to be true solely for purposes of ruling on Plaintiffs' Motion to Dismiss.

2

at the new Pinecrest Development in Orange Village, Ohio. (*Id.* at ¶ 24.) Plaintiffs objected to Condado coming into the Cleveland market, although the geographic restrictions in the RSA had expired and the Pinecrest location was more than two miles from any existing Barrio. (*Id.*) Plaintiffs and Defendants engaged in some preliminary discussions regarding a possible sale of Barrio to Condado, but they did not come to an agreement. (*Id.* at ¶ 26.)

Consequently, in September 2018, approximately six weeks before Condado's scheduled opening at Pinecrest, Plaintiffs filed their original Complaint in this Court. (*Id.* at ¶ 28; Doc. No. 1.) Plaintiffs then used the pending suit and the threat of a temporary restraining order to try and strong-arm Defendants into paying substantially more than Barrio was worth, but Defendants refused, and negotiations quickly broke down. (Doc. No. 58, Defendants' Counterclaim Against Plaintiffs, at ¶¶ 31-32.) Subsequently, on November 2, 2018, Plaintiffs moved for a temporary restraining order to prevent Condado's opening at the Pinecrest location. (Doc. No. 5.) However, the prior judge assigned to this case denied Plaintiffs' motion, finding that they had failed to demonstrate by clear and convincing evidence a substantial likelihood of success on the merits. (Doc. No. 14.)

Since then, Plaintiffs have amended their Complaint twice. (Doc. Nos. 16, 53.) Plaintiffs' Second Amended Complaint sets forth claims for trade dress infringement and unfair competition, breach of contract, misappropriation of trade secrets, unfair competition and deceptive trade practices, unjust enrichment, tortious interference with business relations, tortious interference with contract, temporary and permanent injunction, copyright infringement, and fraud and conspiracy to commit fraud. (Doc. No. 53 at ¶¶ 58-173.) In response to Plaintiffs' Second Amended Complaint, Defendants filed an Answer and Counterclaim against Plaintiffs, setting forth claims for malicious prosecution,

3

breach of contract, negligent misrepresentation, tortious interference with business relations, and fraud. (Doc. No. 58.)

On December 13, 2019, Plaintiffs filed the Motion to Dismiss currently under consideration, seeking to dismiss Defendants' counterclaims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. No. 61.) Defendants filed a brief in opposition to Plaintiffs' Motion to Dismiss on January 13, 2020, to which Plaintiffs did not reply. (Doc. No. 64.) As such, Plaintiffs' Motion is ripe for consideration.

## II. Standard of Review

Under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-

4

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

#### a. Emails Containing State Court Settlement Negotiations

Before reaching a discussion of the substance of Defendants' counterclaims, Plaintiffs first argue that certain evidence attached to Defendants' Answer and Counterclaim should not be considered by the Court. Specifically, Plaintiffs assert that Exhibit C to Defendants' Answer and Counterclaim (Doc. No. 58-3), which contains emails between the parties negotiating the terms of the RSA, should be excluded based on the parol evidence rule and Federal Rule of Evidence 408. (Doc. No. 61 at 7-11.) As a result, Plaintiffs contend that all counterclaims solely based on the emails should be dismissed, although they do not specify which counterclaims are being referenced. (*Id.* at 7.) The Court finds no reason to dismiss Defendants' counterclaims on this basis or to exclude the emails from evidence at this time.

### i. Parol Evidence Rule

First, Plaintiffs contend Defendants' use of the emails should be precluded by the parol evidence rule because Defendants are attempting to use the emails to vary, contradict, and/or supplement the RSA. (*Id.*) Conversely, Defendants contend the parol evidence rule is inapplicable because it does not bar evidence of additional consistent terms, fraud, or negligent misrepresentation. (Doc. No. 64 at 5-6.) The Court concludes that, at this stage, the parol evidence rule does not preclude Defendants' reliance on the emails submitted in conjunction with their Answer and Counterclaim.

"The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000) (quoting 11 Williston on Contracts (4 Ed.1999) 569-570, Section 33:4)). "The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations." *Id.* (quoting *In re Gaines' Estate*, 100 P.2d 1055, 1060 (Cal. 1940)).

However, "[i]t was never intended that the parol evidence rule could be used as a shield to prevent the proof of fraud." *Id.* at 28 (citation omitted). Indeed, even "the presence of an integration provision does not vitiate the principle that parol evidence is admissible to prove fraud." *Id.* But that principle is not without limitation. Specifically, "the parol evidence rule may not be avoided 'by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are *directly contradicted* by the signed writing." *Id.* at 29 (emphasis added) (quoting

6

*Marion Prod. Credit Ass'n v. Cochran*, 40 Ohio St.3d 265 (1988) (paragraph three of the syllabus)).

As explained by the Supreme Court of Ohio:

> In other words, "[t]he Parol Evidence Rule will not exclude evidence of fraud which induced the written contract. But, a fraudulent inducement case is not made out simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract. Quite to the contrary, attempts to prove such contradictory assertions is exactly what the Parol Evidence Rule was designed to prohibit."

*Id.* (citation omitted). Similarly, with regard to allegations of promissory fraud, "[u]nless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible." *Id.* at 30.

This same concept applies to claims of negligent misrepresentation, which courts have found are not barred by the parol evidence rule when the alleged misrepresentations do not contradict the terms of the written contracts. *See Hodell-Natco Indus., Inc. v. SAP Am., Inc.*, 13 F. Supp. 3d 786, 815-18 (N.D. Ohio 2014); *P.J. Lindy & Co., Inc. v. Savage*, No. E-18-028, 2019 WL 994149, at *7 (Ohio Ct. App. 6th Dist. Mar. 1, 2019) ("We therefore reject the Savages' argument that the 'integration clauses' of paragraphs 10 and 22 preclude P.J. Lindy's claims under the parol evidence rule because neither paragraph directly contradicts the allegedly fraudulent misrepresentations at issue.").

In this case, Plaintiffs assert that Defendants rely on the emails containing the parties' negotiations of the RSA in order to contradict or vary the terms of the RSA, and, therefore, the emails cannot be considered. (Doc. No. 61 at 9.) Specifically, Plaintiffs point to the RSA's provisions prohibiting Defendants from using Barrio's logo, trademarks, service marks, and trade secrets. (*Id.*) Plaintiffs assert Defendants attempt to contradict these terms "by introducing the Emails and arguing that they indicate 'Kahn's intent and right to use the Barrio concept, including the 'Day of the Dead'

7

theme' [and] to 'use the Barrio recipes as long as he did not pass them off as Barrio's recipes.'" (*Id.*) However, at this stage, Plaintiffs have not shown that such arguments in support of Defendants' negligent misrepresentation and fraud claims directly contradict the terms of the RSA. Rather, it is still possible that the alleged representations by Plaintiffs regarding Kahn's right to open a Mexican restaurant using the Barrio concept and to use Barrio's recipes are independent of or consistent with the RSA. To wit, at this point, Plaintiffs have not demonstrated that use of the Barrio concept and Day of the Dead theme is inconsistent with the RSA's prohibition on the use of Barrio's logo, trademarks, service marks, and trade secrets. In addition, Plaintiffs have not yet established that Barrio's recipes are trade secrets such that their use by Defendants would directly contravene the RSA. As a result, at this stage of the proceedings, the parol evidence rule does not bar Defendants from introducing the emails in support of their fraud and negligent misrepresentation claims. Moreover, as noted above, the presence of an integration provision in the RSA does not change this analysis. *See Galmish*, 90 Ohio St.3d at 28.

### ii. Federal Rule of Evidence 408

Plaintiffs also assert that the emails should be excluded and stricken as improper evidence of settlement negotiations under Federal Rule of Evidence 408(a). The Court will deny this request, as it finds Rule 408(a) inapplicable in these circumstances.

In general, "Rule 408 prohibits the admission, for certain purposes, of offers to compromise along with any statement made during the course of such compromise negotiations." *Gjokaj v. United States Steel Corp.*, 700 F. App'x 494, 501 (6th Cir. 2017). Importantly, "[h]owever, this Rule applies only to preclude evidence related to the claim 'that was the subject of the compromise.'" *Id.* (quoting *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293-94 (6th Cir. 1997)); *accord*

*Donnelly Corp. v. Gentex Corp.*, 918 F. Supp. 1126, 1133 (W.D. Mich. 1996) ("From the mere text of the Rule, it is obvious that the Rule itself does not preclude evidence of these compromises in this case because the offers to compromise the claims do not concern the claim being litigated in this case.").

Here, the emails that Plaintiffs contend should be excluded are evidence of the parties' negotiations and settlement efforts with respect to the claims asserted in the state court litigation initiated in 2013 between Kahn and Leneghan—not the claims asserted in this suit.  (*See* Doc. No. 58-3.)  As such, Rule 408 is inapplicable and does not require the exclusion of the email evidence attached to Defendants' Answer and Counterclaim.

Having decided this preliminary issue, the Court will move on to an assessment of the merits of Plaintiffs' Motion to Dismiss with respect to each of Defendants' counterclaims.

### b.  Count I – Malicious Prosecution

In Count I of their counterclaims, Defendants assert a malicious prosecution claim against Plaintiffs based on Plaintiffs' filing of the instant action, which Defendants contend is frivolous and was brought in bad faith. (Doc. No. 58, Defendants' Counterclaim Against Plaintiffs, at ¶¶ 35-42.) Plaintiffs argue that this claim must be dismissed because Defendants have failed to allege two required elements of a malicious prosecution claim—termination of the underlying suit in Defendants' favor and the seizure of Defendants' property.  (Doc. No. 61 at 12-13.)  In response, Defendants contend that they have satisfied the favorable judgment element because of this Court's previous rulings denying Plaintiffs' request for a temporary restraining order and granting in part Defendants' Motion for Judgment on the Pleadings, which resulted in the dismissal of one of Plaintiffs' claims.  (Doc No. 64 at 7-8.)  Defendants also assert that the seizure of their property is

not required in order to state a claim for malicious prosecution under Ohio law. (*Id.* at 8-9.) The Court disagrees and finds that Defendants' failure to allege any seizure of their property requires dismissal of their claim for malicious prosecution.[2]

"In order to state a cause of action for malicious civil prosecution in Ohio, four essential elements must be alleged by the plaintiff: (1) malicious institution of prior proceedings against the plaintiff by defendant, (2) lack of probable cause for the filing of the prior lawsuit, (3) termination of the prior proceedings in plaintiff's favor, and (4) seizure of plaintiff's person or property during the course of the prior proceedings." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264 (1996) (syllabus). With regard to the final element, the Supreme Court of Ohio has elaborated that "[a] cause of action for malicious civil prosecution will lie only in cases where there is a prejudgment seizure of property, *i.e.,* where there essentially has been a judgment against, and a concomitant injury suffered by, a defendant before he has had a chance to defend himself." *Id.* at 270. As a result, dismissal is appropriate when a party fails to allege that such a seizure occurred. *See id.* ("[I]n order to properly assert a claim of malicious civil prosecution, appellants were required to satisfy the seizure element. Since appellants presented no evidence of seizure, we affirm the judgment of the appellate court on this issue."); *Ahlbeck v. Joelson*, No. L-96-413, 1997 WL 458460, at *3 (Ohio Ct. App. 6th Dist. Aug. 8, 1997) (affirming dismissal because there was nothing in the complaint that "would constitute a 'seizure' such that would satisfy that element of the tort of malicious civil prosecution").

In this case, Defendants have not alleged any seizure of their property as a result of this suit, but assert that seizure is not a required element of their malicious prosecution claim. (Doc. No. 64 at

---

[2] As a result, the Court need not consider Plaintiffs' argument regarding Defendants' failure to allege the favorable termination of the underlying suit in Defendants' favor.

10

8-9.)  The authority cited by Defendants in support of their argument, however, only applies to a claim of malicious *criminal* prosecution.  In *Robb*, the Supreme Court of Ohio recognized that it has "eliminated the element of arrest or seizure from the claim of malicious *criminal* prosecution."  75 Ohio St.3d at 269 (citing *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142 (1990)).  However, it expressly stated that "the interests of justice and judicial economy are best served by continuing to require the element of seizure of property in malicious *civil* prosecution cases."  *Id.* at 270 (emphasis added).  Because Defendants' malicious prosecution claim is founded on civil proceedings, seizure of property is a necessary element of their claim.  Thus, Defendants' failure to allege a seizure of their property requires dismissal, and Plaintiffs' Motion to Dismiss is granted with respect to Count I of Defendants' counterclaims.

      c. **Count II – Breach of Contract**

In Count II, Defendants claim that Plaintiffs breached the RSA by filing this suit, which Defendants contend violated the RSA's provisions (1) prohibiting the publication of defamatory or negative comments about parties to the RSA, and (2) prohibiting interference with the business interests of parties to RSA.  (Doc. No. 58, Defendants' Counterclaim Against Plaintiffs, at ¶¶ 43-51.)  In their Motion to Dismiss, Plaintiffs contend that because Defendants breached the RSA prior to any alleged breach by Plaintiffs, Defendants cannot meet a required element of a breach of contract claim—that Defendants fulfilled their contractual obligations—and that Defendants' breach amounts to an anticipatory repudiation of the RSA.  (Doc. No. 61 at 13-15.)  Defendants claim that Plaintiffs' argument is not a proper basis for a motion to dismiss because Plaintiffs have not yet proven their allegations related to Defendants' alleged breach.  (Doc. No. 64 at 9-10.)  The Court agrees and finds that dismissal is not warranted.

11

To establish a claim for breach of contract, a plaintiff must demonstrate "(1) that a contract existed, (2) that the plaintiff fulfilled his obligations, (3) that the defendant failed to fulfill his obligations, and (4) that damages resulted from this failure." *Spano Bros. Constr. Co., Inc. v. Adolph Johnson & Son Co., Inc.*, No. 23405, 2007 WL 912229, at *2 (Ohio Ct. App. 9th Dist. Mar. 28, 2007). "When a party to a contract declares that he or she will not perform the terms of the contract, an anticipatory repudiation occurs and the injured party can immediately maintain an action for breach." *Cambridge Co., Ltd. v. Telsat, Inc.*, No. 23935, 2008 WL 649582, at *3 (Ohio Ct. App. 9th Dist. Mar. 12, 2008).

Here, Plaintiffs' argument for dismissal is based on their own allegations that Defendants breached the RSA. However, Plaintiffs have not proven their allegations regarding Defendants' alleged breach and anticipatory repudiation, and the Court cannot assume that they are true. To the contrary, in ruling on Plaintiffs' Motion to Dismiss, the Court must accept Defendants' factual allegations as true and construe their counterclaims in the light most favorable to them. *See Gunasekara*, 551 F.3d at 466. As such, Plaintiffs' Motion to Dismiss is denied as to Defendants' breach of contract claim.

### d. Count III – Negligent Misrepresentation

In Count III, Defendants allege that Plaintiffs negligently misrepresented that Kahn and his partners could open a Mexican restaurant essentially identical to Barrio in theme, concept, and menu offerings as long as they stayed at least two miles away from any existing Barrio location for a period of two years. (Doc. No. 58, Defendants' Counterclaim Against Plaintiffs, at ¶¶ 52-58.) Plaintiffs contend dismissal of Defendants' negligent misrepresentation claim is warranted because Defendants make only conclusory allegations regarding Plaintiffs' false statements and how Defendants

justifiably relied on those statements. (Doc. No. 61 at 15-16.) In response, Defendants assert their allegations contain factual matter and specific instances of misrepresentation demonstrating a valid claim for negligent misrepresentation, citing to several paragraphs in their Answer and Counterclaim. (Doc. No. 64 at 11-12.) Upon review, the Court concludes that Defendants have adequately stated a claim for negligent misrepresentation.

In Ohio, "[t]he doctrine of negligent misrepresentation provides recovery where: 1) a party who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, provides false information; 2) for the guidance of another party in its business transaction, 3) causing the other party to suffer pecuniary loss, 4) as a result of justifiable reliance on the information, 5) if the one providing the information failed to exercise reasonable care or competence in obtaining and communicating the information." *Miller v. Med. Mut. of Ohio*, No. 2012CA0020, 2013 WL 3817850, at *5 (Ohio Ct. App. 5th Dist. July 18, 2013).

In their Answer and Counterclaim, Defendants make more than conclusory allegations regarding Plaintiffs' alleged misrepresentations. Defendants specifically allege that Plaintiffs falsely represented to Defendants through both emails and certain provisions of the RSA that Defendants could open their own Mexican restaurant using Barrio's recipes, the build-your-own taco concept, and the Day of the Dead theme, subject to a few restrictions. (*See* Doc. No. 58, Defendants' Counterclaim Against Plaintiffs, at ¶¶ 12-14.) Moreover, it is clear from Defendants' allegations that they justifiably relied on Plaintiffs' alleged misrepresentations when opening their Condado restaurants, including their eventual expansion to the Pinecrest location. (*See id.* at ¶¶ 15-28.) Accordingly, the Court finds Plaintiffs' arguments unpersuasive, and will deny their Motion to Dismiss with respect to Count III.

### e. Count IV – Tortious Interference with Business Relations

In Count IV, Defendants allege that Plaintiffs initiated this lawsuit in order to interfere with Defendants' business relations with prospective investors, purchasers, vendors, and lessors. (*Id.* at ¶¶ 59-67.) Plaintiffs contend Defendants' tortious interference with business relations claim should be dismissed because Defendants make only conclusory allegations with regard to Plaintiffs' intent and awareness of Defendants' prospective business relations. (Doc. No. 61 at 17.) Plaintiffs also assert Defendants have failed to allege that Plaintiffs' actions ended or prevented a business relationship. (*Id.*) In opposition, Defendants argue they have pled facts sufficient to establish their claim. (Doc. No. 64 at 12-13.) The Court concludes that Defendants have failed to adequately state a claim, and, therefore, the Court will dismiss Defendants' claim for tortious interference with business relations.

Under Ohio law, "[t]he elements of a tortious interference with a business relationship claim require (1) a business relationship; (2) the wrongdoer's knowledge of the relationship; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages." *N. Chem. Blending Corp., Inc. v. Strib Indus., Inc.*, No. 105911, 2018 WL 4043487, at \*6 (Ohio Ct. App. 8th Dist. Aug. 23, 2018). Put simply, "[t]ortious interference with a business relation occurs when 'a person, without privilege, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship, or perform a contract with another.'" *Id.* at \*7 (quoting *Castle Hill Holdings, LLC v. Al Hut, Inc.*, No. 86442, 2006 WL 726911, at \*6 (Ohio Ct. App. 8th Dist. Mar. 23, 2006)).

A vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim. *Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010). Accordingly, dismissal of a claim for tortious interference with business relationships is appropriate "[a]bsent some factual allegation that [the defendant's] actions ended or prevented a business relationship." *Id.* For example, in *Wilkey*, the Sixth Circuit affirmed the dismissal of the plaintiff's claim when the plaintiff failed to allege that "any individuals terminated, or decided not to enter into, relationships with him as a result of [the defendant's] actions." *Id.*; *see also Mettler-Toledo, Inc. v. B&B Elec, Inc.*, No. 2:18-CV-00494, 2019 WL 1649321, at *6 (S.D. Ohio Apr. 17, 2019) (granting motion for judgment on the pleadings when the plaintiff did "not allege that it has actually incurred a loss of its business relationship with WiDOT as a result of Defendant's alleged conduct"); *Richardson v. CVS Caremark Corp.*, No. 1:18 CV 1308, 2018 WL 4189522, at *3 (N.D. Ohio Aug. 31, 2018) (granting motion to dismiss where "Plaintiffs allege[d] no specific instances in which patients ended or chose not to enter into a business relationship with Plaintiffs as a result of the statements and ma[de] only conclusory statements regarding damages").

While Defendants have sufficiently alleged Plaintiffs' intent to interfere with their business relationships and Plaintiffs' knowledge of those relationships, the Court finds that Defendants have failed to allege that Plaintiffs' actions ended or prevented any of those relationships. Instead, Defendants have made only vague and conclusory allegations of interference with their business relationships and resulting damages. (*See* Doc. No. 58, Defendants' Counterclaim Against Plaintiffs, at ¶¶ 59-67.) Those allegations are insufficient to state a claim for tortious interference with business relationships. Accordingly, Plaintiffs' Motion to Dismiss is granted with respect to Count IV of Defendants' counterclaims.

15

### f. Count V – Fraud

Finally, in Count V, Defendants base their fraud claim on Plaintiffs' alleged fraudulent misrepresentations that they would abide by the express terms of the RSA as long as Kahn and his partners complied with the geographic restrictions contained therein. (*Id.* at ¶¶ 68-75.) Plaintiffs assert Defendants have failed to allege their fraud claim with the specificity required with respect to Plaintiffs' supposed misrepresentations. (Doc. No. 61 at 18-19.) Defendants once again point to several specific allegations from their Answer and Counterclaim that they contend adequately support their fraud claim. (Doc. No. 64 at 13-14.) The Court agrees with Defendants that they have alleged Plaintiffs' misrepresentations with sufficient specificity.

"Under Ohio law, the elements of fraud are (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 540 (6th Cir. 2000).

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this particularity requirement, "a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005) (citations and internal quotations omitted). "The threshold test is whether the complaint places the defendant on 'sufficient

notice of the misrepresentation,' allowing the defendants to 'answer, addressing in an informed way plaintiffs [sic] claim of fraud.'" *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (citation omitted).

In this case, in addition to detailing the circumstances regarding the negotiation and adoption of the RSA, Defendants specifically allege that Plaintiffs "fraudulently entered into the RSA solely to resolve the underlying litigation with no intention of actually abiding by its terms if and when Defendants decided to enter the Cleveland market" and "fraudulently misrepresented they would abide the express terms of the RSA as long as Kahn and his partners complied with the geographic restrictions contained in the RSA." (Doc. No. 58, Defendants' Counterclaim Against Plaintiffs, at ¶¶ 69-70.) The Court finds that Defendants' allegations are sufficiently particular to state a claim of fraud. *See Michael J. Cavill 2012 Irrevocable Tr. v. BMC Growth Fund LLC*, No. 3:17-cv-270, 2018 WL 4690792, at *3 (S.D. Ohio Sept. 28, 2018) (holding plaintiff satisfied Rule 9(b) when the complaint alleged that "at the time BMC entered into the Agreement to purchase CRS, it had no intention to honor its obligations to operate CRS 'in good faith using commercially reasonable efforts to maximize revenues'").

## IV. Conclusion

For the reasons set forth above, Plaintiffs' Motion to Dismiss (Doc. No. 61) is GRANTED IN PART and DENIED IN PART. Plaintiffs' Motion is GRANTED as to Counts I and IV, and DENIED as to Counts II, III, and V. Dismissal is without prejudice in light of the "well-established preference for allowing claims to be decided on their merits when possible." *See Burkeen v. A.R.E. Accessories, LLC*, 758 F. App'x 412, 416 (6th Cir. 2018).

**IT IS SO ORDERED.**

17

Date: June 30, 2020

                 *s/Pamela A. Barker*
                 PAMELA A. BARKER
                 U. S. DISTRICT JUDGE